Brown Chemical Co. *v.* Myer and others.

*(Circuit Court, E. D. Missouri, E. D.    June 30, 1887.)*

Trade-Mark—Infringement—Deceiving Public—Similarity in Names.

Where the complainant sold a medicine called "Brown's Iron Bitters," which had been compounded by one Brown, and the defendants subsequently began to sell a medicine called "Brown's Iron Tonic," prepared under a different formula by another Brown, who, *bona fide*, gave it his name, the bottles, wrappers, and labels of the defendants bearing no resemblance to those of the complainant; and the medicine itself being distinguished from that manufactured by complainant, in the circulars issued by defendants, *held,* that there was no infringement of any symbol, device, or word constituting a trade-mark, nor any evidence of fraud or intent to deceive the public; and that the mere similarity in the sound of the two names furnished no ground for equitable interference.

In Equity.
*Rowland Cox* and *Benjamin F. Rex,* for complainant.
*Boyle, Adams & McKeigham,* for defendants.

Thayer, J. This case has been elaborately argued. Under the pleadings and proofs, I regard it as, in substance, a proceeding to restrain unfair competition in trade. It is not a case of infringement of a trade-mark, because the testimony does not show that defendant has appropriated any symbol, device, or word, first adopted by complainant, which can be regarded as constituting a trade-mark. Since the year 1879 it appears that complainant has been manufacturing a remedy known and labeled as "Brown's Iron Bitters," at Baltimore, Maryland. Defendants, who are wholesale druggists at St. Louis, Missouri, for some time past have purchased of Lincoln & Co., of Little Rock, Arkansas, and have been selling in the usual course of business, an article known as "Brown's Iron Tonic." Brown's Iron Bitters was originally compounded by a man by the name of Brown, of Baltimore, Maryland, from whom the complainant corporation takes its name and its title to the recipe for the bitters. A man by the name of E. L. Brown, re-

siding at Little Rock, Arkansas, and at the time a member of the firm of Lincoln & Co., devised the formula for "Brown's Iron Tonic" in the fall of 1881, and gave the medicine his name. Brown's Iron Tonic does not appear to have entered the market extensively until the spring of 1882, at which time complainant had spent many thousand dollars in advertising Brown's Iron Bitters, and the article was in great demand.

Complainant's counsel does not, in express terms, assert that the words "Brown's Iron Bitters," either singly or collectively, constitute a trade-mark. Such a proposition, if asserted, could not be maintained, as it goes without saying that the words "Iron Bitters" are merely descriptive of an ingredient and quality of the article, and for that reason cannot be appropriated as a trade-mark. *Canal Co.* v. *Clark*, 13 Wall. 323; *Amoskeag Manuf'g Co.* v. *Spear*, 2 Sandf. 599; *Raggett* v. *Findlater*, L. R. 17 Eq. 29; *Manufacturing Co.* v. *Trainer*, 101 U. S. 54.

The name "Brown," prefixed to "Iron Bitters," is likewise an ordinary patronymic, (and a very common one withal,) and cannot be exclusively appropriated as a trade-mark by any one person of that name, although a man may be restrained from placing his own name even on articles of his own manufacture, under such circumstances and with such devices as indicate to the public that they are the goods of some other person of that name. In such cases, however, an injunction issues not because the name of the person is a trade-mark, but because such conduct is fraudulent. *Croft* v. *Day*, 7 Beav. 84; *Holloway* v. *Holloway*, 13 Beav. 209; *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508; *McLean* v. *Fleming*, 96 U. S. 251; *Levy* v. *Walker*, 10 Ch. Div. 447; *Seixo* v. *Provezende*, L. R. 1 Ch. 195; *William Rogers Manuf'g Co.* v. *Rogers & S. Manuf'y Co.*, 11 Fed. Rep. 499.

It may be furthermore stated in this connection that the proprietors of "Brown's Iron Tonic" do not offer the article to the public in bottles or wrappers that bear any resemblance to complainant's bottles and wrappers. On the argument of the case it was conceded that the respective bottles and wrappers were unlike in form, shape, and color, and that no one acquainted with either remedy, as prepared for sale, would be liable to mistake it for the other; and from the specimens exhibited at the hearing so much, at least, was apparent to the court. As there does not appear, then, to have been an infringement of a trade-mark, and as complainant's bottles, wrappers, etc., have not been imitated so as to deceive the eye of any one who is casually acquainted with the appearance of "Brown's Iron Bitters," as that medicine is put upon the market, it is obvious that complainant's right to relief (if such right exists) rests upon rather narrow grounds. The right must be predicated solely on the assumption that the words "Brown's Iron Tonic" so nearly resemble the words "Brown's Iron Bitters" *in sound* that an ordinary mind would not note the difference; and that the use of the former words by Lincoln & Co., and by the defendants, tends to deceive persons who have become acquainted with the reputation of complainant's bitters, but are not familiar with the outward appearance of the packages in which they are contained.

Without stopping to determine at this point whether it is true, as assumed, that the words "Brown's Iron Tonic" do deceive persons who are only acquainted with the reputation of complainant's bitters, and without stopping to determine the extent of such deception, if any, it is proper to inquire, in the first instance, whether a court of equity can lawfully enjoin the use of the words "Brown's Iron Tonic," or compel the use of other words in their stead, on the narrow ground above indicated. That is to say, the legal proposition involved is whether one manufacturer of a patent medicine can be enjoined from using certain words on his wrappers merely because they are similar in sound to words which have previously been appropriated by some other manufacturer, the words themselves in both instances being truly descriptive of an ingredient and quality of the medicine, and of the person who originally compounded the same, and the packages to which they are applied being totally unlike in outward appearance. After a careful analysis of the various decisions on the subject, the court has reached the conclusion that the foregoing proposition must be decided in the negative. None of the cases, in my judgment, warrant the assumption that a man may be enjoined from giving his own name to a medicine or other article of which he is in good faith the manufacturer, although the result may be to confound the article to some extent in the public mind with a similar article previously manufactured by some other person of the same name, unless the use of his own name is *merely colorable*, and is accompanied with some artifice calculated to further the deception and mislead the public.

In the case of *Wotherspoon* v. *Currie, supra*, defendant was enjoined from using the word "Glenfield" on his starch, although the same was manufactured at "Glenfield." But it appeared that defendant had located his establishment at that place merely to acquire a colorable right to the name "Glenfield," and that by so doing he deceived the public into the belief that his starch was manufactured by complainants, who had previously manufactured starch at Glenfield, and by that name had built up a great reputation for their goods.

In the case of *Lee* v. *Haley*, L. R. 5 Ch. 155, the defendant was enjoined from using the words "Pall Mall Guinea Coal Co.," although he did business in Pall Mall street, and although there were other guinea coal companies in London. It appeared in that case, however, that defendant had previously been manager for the plaintiffs, who for a series of years carried on the coal trade in Pall Mall under the name of the "Guinea Coal Co.," and were frequently called the "Pall Mall Guinea Coal Co."

The case of *Seixo* v. *Provezende, supra*, is of the same character.

These cases certainly carry the law invoked by the complainant as far as any cases that can be found, but it is manifest that the principle involved in those decisions would not warrant an injunction in the case now under consideration. In the present case the word "Brown," (which forms the chief subject of contention,) as employed by Lincoln & Co., *truly represents a person of that name who, while a member of the firm, compounded the formula, and gave it his name, which it still bears;* and in addi-

tion to the differences in the bottles, labels, etc., before adverted to, it appears that the proprietors of the remedy, as a further mark of distinction, use the word "Tonic" instead of "Bitters." These are all circumstances which tend strongly to rebut the charge that Lincoln & Co. acted *malo animo*, and that the words "Brown's Iron Tonic" do deceive the public; and in this respect they distinguish the case at bar from the cases last above cited, in which a fraudulent intent was clearly apparent.

The case of *Hier* v. *Abrahams*, 82 N. Y. 519, which is relied upon by complainant's counsel to support the proposition that an injunction may be awarded because the words "Brown's Iron Tonic," to the unobservant ear, sound like the words "Brown's Iron Bitters," in reality has no application to the present controversy. That was purely a case of trademark. Plaintiffs had adopted an arbitrary word "Pride," and applied it to a brand of cigars. Defendants had pirated the word, and the court held that they must be enjoined from using the same in connection with their cigars, even though their labels and brands were in all other respects unlike the plaintiffs. On the other hand, as the particular claim made by the complainant is that incautious persons may mistake the words "Brown's Iron Tonic" for "Brown's Iron Bitters," because of similarity in sound, it is more pertinent to quote one of the closing paragraphs in the case of *Canal Co.* v. *Clark*, 13 Wall. 327, wherein it is said:

"It is only when the adoption or imitation of what is claimed to be a trademark amounts to a false representation, express or implied, designed or incidental, that there is any title to relief against it. True, it may be that the use by a second producer in describing truthfully his product, of a name or a combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product; but if it is just as true in its application to his goods as it is to those of another who first applied it, and who therefore claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers may be mistaken, but they are not deceived, by false representations, and equity will not enjoin against telling the truth."

In that case, as in this, complainants, who had long mined and sold coal under the name of "Lackawanna Coal," complained of defendant for describing and selling coal by the same name. The contention was that by the use of the word "Lackawanna" persons were deceived, and bought defendant's coal supposing it to be plaintiff's product, just as in the present case it is asserted that by the use of the word "Brown," as applied to "Iron Tonic," the public are led to mistake the tonic for complainant's bitters. The answer is (in the language above cited) that so long as the representation is true, so long as it appears that the mixture is Brown's Tonic, and no artifice is shown, as by simulated bottles and labels, or other means to deceive the public, equity will not enjoin. Whatever mistakes may arise because the names of the compounders of the two medicines are the same, cannot be remedied by injunction.

If it was necessary to determine the further question whether the use of the words "Brown's Iron Tonic," under the circumstances shown by the evidence, induces any considerable number of persons to buy that rem-

edy when they intend to buy complainant's remedy, I should have very little hesitation in answering *that* question in the negative. Complainant seems to have been of the same opinion when the tonic was first called to its attention. In August, 1882, Lincoln & Co. forwarded a bottle of the tonic, as it was prepared for sale, to the complainant, for its inspection, stating that the formula had been devised by Mr. E. L. Brown, of their firm, and that Lincoln & Co. were manufacturing the tonic. Complainant acknowledged the receipt of the package, and in so doing used the following language: "We wish Brown's 'Iron Tonic' a success, as, upon examination, we cannot see where it can conflict with us, except in the multiplicity of the Brown family."

While this is not conclusive evidence on the point under consideration, it is very persuasive proof that the tonic is not liable to be mistaken for the bitters, and *vice versa*, and there is nothing in the record that is calculated to overthrow the conclusion which complainant itself formed before any controversy had arisen. Subsequently Lincoln & Co. issued a trade circular, in which they drew a very clear distinction between the bitters and the tonic as rival remedies, and offered the tonic to the trade at a lower price than the bitters, and recommended it as a superior remedy. That action on the part of Lincoln & Co. seems to have ruptured the friendly relations before existing between the parties, and undoubtedly led to this litigation. If Lincoln & Co. had not reduced the price of their goods, and recommended them to their customers as a better article, the conclusion is irresistible that complainants would not have complained of any wrong done to themselves or to the public by the sale of Brown's Iron Tonic.

Courts of equity have no concern with such acts of competition between rival manufacturers as are disclosed by the circular in question. They can only interfere when a manufacturer resorts to some unlawful or fraudulent means to confound his own goods in the public mind with those of some other dealer. The circular before alluded to did not have the effect of confusing the two remedies in the public mind, and thereby inducing persons to buy the "tonic" when they intended to buy the complainant's bitters; but, as it seems to me, a directly opposite tendency.

It is unnecessary, however, to indulge in speculation on this subject, as the bill must be dismissed for the reason first above assigned; that is to say, because E. L. Brown, under the circumstances shown, had the right to affix his name to the tonic, and because the mere similarity in the sound of the two names, "Brown's Iron Bitters" and "Brown's Iron Tonic," furnishes no ground for equitable interference.