TRASK FISH COMPANY, Respondent, v. FRANK WOOSTER *et al.*, Appellants.

St. Louis Court of Appeals, January 3, 1888.

1. TRADEMARK—WORDS IN COMMON USE.—Ordinary English words in common use, as descriptive of a particular article, cannot be exclusively appropriated as a trademark by one dealing in such article.

2. ——— NOT ESSENTIAL TO RIGHT OF PROTECTION.—A dealer may have no proper trademark, and may yet be protected in equity against fraudulent imitations of his packages, calculated to deceive purchasers into the belief that they came from such dealer.

3. FRAUDULENT IMITATION OF PACKAGES AND PARCELS.—Where a dealer has continuously, during a long period, put up his wares for sale in packages or parcels of uniform and distinguishable shape, size, and contents, with marks or brands similarly distinguishable and uniform, equity will restrain another dealer from adopting the same or closely similar characteristics in his packages or parcels, to the trade piracy and injury of the one who first employed them.

APPEAL from the St. Louis Circuit Court, HON. SHEPARD BARCLAY, Judge.

*Affirmed.*

J. P. VASTINE, for the appellants: All that is involved is the right of appellants to use the words, "Selected Shore Mackerel." Respondent claims them as a part of its trademark, and appellants deny the claim. Allegations and evidence of use of certain words, figures, and brands not contained in trademark, are irrelevant and immaterial. Rev. Stat., sec. 7542. The words, "selected shore," have been applied to mackerel, probably as long as there has been a mackerel. As a matter of law, respondent has no right to the exclusive use of the said words, for they are not subject to appropriation, in that they are common words of the English language. It is essential to a trademark that it should be connected with an article as the same is offered for sale. *Piano Manufacturing Co. v. Merkel*, 1 Mo. App. 305. A word used to distinguish a known quality of goods cannot be adopted as a trademark and appropriated by a single person as against the general public. *Snodgrass v. Welle*, 11 Mo. App. 590. The trademark must point out the source and origin of the goods, and not be merely descriptive of the style, quality, or character of the goods themselves. *Filley v. Fassett*, 44 Mo. 168. To justify an injunction against a defendant from the use of a certain brand, it should at least appear that the resemblance between the two brands was sufficiently close to raise a probability of mistake on the part of the public, or design and purpose to mislead and deceive on the part of the defendant. *McCartney v. Garnhart*, 45 Mo. 593. The word, "Vienna," is a word used as an adjective to designate a particular kind or quality of bread, and such a word cannot be appropriated to the use of a single individual. *Snodgrass v. Welle*, 11 Mo. App. 590; *Caswell v. Davis*, 58 N. Y. 223; *Burke v. Cassin*, 45 Cal. 457.

BOYLE, ADAMS & McKEIGHAN, also, for the appellants: One cannot claim protection for the exclusive use of a trademark or trade name which would practi-

cally give him a monopoly in the sale of any goods other than those produced by himself. In case a generic name, or a name merely descriptive of an article, of its qualities, ingredients, or characteristics be employed as a trademark, the exclusive use of it is not entitled to protection. *Canal Co. v. Clark,* 13 Wall. 311; *Manufacturing Co. v. Trainer,* 101 U. S. 51; *Carbolic Co. v. Thompson,* 25 Fed. Rep. 625; *Lea v. Deakon,* 11 Biss. 23; *Caswell v. Davis,* 58 N. Y.; *Ayer v. Rushton,* 7 Daly, 9; *Papham v. Cole,* 66 N. Y. 96; *Van Beill v. Prescott,* 46 N. Y. 542; *Choyenske v. Cohen,* 35 Cal. 501; *Larrabee v. Lewis,* 67 Ga. 561; *Eggers v. Hink,* 63 Cal. 445; *Fettridge v. Wells,* 4 Abb. Pr. 144; *Town v. Stepsom,* 5 Abb. Pr. (N. S.) 218; *Lea v. Wolff,* 13 Abb. Pr. (N. S.) 391; *Filley v. Fassett,* 44 Mo. 176; *Alden v. Gross,* 25 Mo. App. 123. The appellants have a right to truthfully describe their mackerel, and though this may have the effect of causing the public to be mistaken as to the origin or ownership of the mackerel, there is no legal or moral wrong done. Purchasers may be mistaken, but they are not deceived, and equity will not enjoin against telling the truth. *Mfg. Co. v. Trainer,* 101 U. S. 51; *Canal Co. v. Clark,* 13 Wall. 311. The petition does not state either a trade-mark case, or a case of fraud. The words, "Selected Shore Mackerel," on their face show that they cannot be the subject of a trademark, and no facts are charged in the petition sufficient to constitute a fraud by one trader or merchant against another. The respondent is not entitled to, and cannot establish, a trademark in the words, "Selected Shore Mackerel." Such words on their face indicate, and the evidence on both sides still further emphasizes it, that they are merely descriptive of the quality and character of the mackerel, mere common words open to use by any one engaged in the business to describe their goods. A word or name to be a trademark must be arbitrary. *Mfg. Co. v. Spear,* 2 Sand. 597; *Canal Co. v. Clark,* 13 Wall. 322.

SMITH & HARRISON, for the respondent: It is a rule that, while a particular name or words used may not of themselves, unconnected with forms, devices, or designs, constitute a technical trademark, yet courts of equity will check and restrain fraud whenever it is resorted to by one to obtain an unfair advantage of another, either by obtaining the good-will of his business, or by the fraudulent imitation of his packages, labels, brands, devices, designs, etc. *Shon v. Giesendorf*, 1 Wilson [Ind.] 60; *Sawyer v. Horn*, 1 Fed. Rep. 24-33; *Craft v. Day*, 7 Beav. 84; *Perry v. Treufit*, 6 Beav. 66, 73; *Williams v. Johnson*, 2 Bosworth [N. Y.] 1; *Holloway v. Holloway*, 13 Beav. 207; *Leather Cloth Co. v. American Leather Co.*, 11 Jur. [N. S.] 513; *Dixon Crucible Co. v. Guggenheim*, 2 Brewster [Pa.] 321; *Stonebreaker v. Stonebreaker*, 33 Md. 252; *McLean v. Fleming*, 96 U. S. 245; *Leclance Battery Co. v. Western Electric Co.*, 28 Fed. Rep. 276; *Carbolic Co. v. Thompson*, 25 Fed. Rep. 625; *Royal Baking Powder Co. v. Davis*, 26 Fed. Rep. 293. It is the general doctrine of courts of equity that the right a person may have to the protection of the courts does not depend on an exclusive right to a particular name or form of words. The right is to be protected from fraud, and this may be practiced by means of a name or words, which defendant may have a perfect right to use, when its use is not accompanied with circumstances such as effect fraud on others. *Croft v. Day*, 7 Beav. 84; *Rogers v. Newell*, 6 Hare, 325; *Holloway v. Holloway*, 13 Beav. 209; *Howe v. Sewing Machine Co.*, 50 Barb. 236; *Stonebreaker v. Stonebreaker*, 33 Md. 252. In any case in which arises any element of actual, intentional fraud, this will be taken into consideration, and the court will, in the exercise of its general jurisdiction for the repression of fraud, award an injunction in which, but for the fraud, no remedy would have been given. Sebastian on Law of Trademarks, 49. "The governing principle is, that one manufacturer shall not be allowed

to impose his goods upon the public as the goods of another manufacturer, and so derive a profit from the reputation of that other." One mark need not be an exact imitation of the other. The imitation need not be so close as to deceive cautious persons. It is sufficient that it is so close as to deceive the incautious and unwary. *McCann v. Anthony*, 21 Mo. App. 83. In cases of fraud, wherein a party fails to appear and testify to his own innocence, this will raise a presumption in favor of the charge. *Baldwin v. Whitcomb*, 17 Mo. 651, 658; *Moby v. McClurg*, 24 Mo. 575, 591, 592; *Cass County v. Green*, 66 Mo. 498, 512; *Hudson v. Hudson*, 55 Mo. 524, 557.

LEWIS, P. J., delivered the opinion of the court.

The petition states, substantially, that the plaintiff, a corporation, and the defendants, a partnership firm, are both engaged in the business, in St. Louis, of packing and dealing in fish, as wholesalers, and that they both deal and sell in the same markets; that the plaintiff has for many years done a very large business, and, for some years past, has packed and vended a certain brand of mackerel, put up with care, to which the plaintiff appropriated the name of "Trask's Selected Shore Mackerel"; and plaintiff, thereupon, and thereafter, has continuously packed and sold the said brand under that name; that the words constituting said name do not indicate the quality of the goods, but are a true and proper trademark indicating the source and origin of said goods; that the plaintiff has duly registered, and caused to be recorded in the proper offices, its said trademark, both in the city of St. Louis, and in the patent-office at Washington City, D. C.; that the plaintiff's said brand of mackerel, designated by the trademark aforesaid, has become extensively known to the trade as being of uniform and superior quality, and the plaintiff, at great expense of advertising, etc., has built up a large and lucrative trade in the said product; that the plaintiff has for a long time past continuously used

its said trademark in the manner following : "By the branding of the words, 'Trask's Selected Shore Mackerel,' on the top of each pail, and on the barrels and half-barrels containing its mackerel of that brand, in black capital letters, with the number of mackerel contained therein, the year when packed, and the word, 'guaranteed.'" The petition then describes an artistic and ornamental label which the plaintiff has continuously affixed to its packages, containing also the trademark words above described, and alleges that the plaintiff has for a long time past enjoyed the exclusive use of said name, brands, marks, labels, and designs, and would now be in the exclusive use and enjoyment thereof, but for the wrongful acts of the defendants, as thereinafter set forth.

It is further alleged that the defendants, "well knowing the premises, but contriving how to injure the plaintiff, without the consent or allowance of the plaintiff, but in violation of its rights, have caused to be prepared, packed, and vended, and does still prepare, pack, and vend, a certain mackerel of quality inferior to that of plaintiff, under the name of 'Selected Shore Mackerel,' and have placed the same upon the market with branding on their pails, barrels, and half-barrels, containing their mackerel, of such close similitude to those employed by the plaintiff, that the same are not distinguishable by the public, and defendants have packed and are now packing the said mackerel in pails, barrels, and half-barrels, which are marked with said branding, prepared in close imitation of the branding of plaintiff, as heretofore described, with black lettering, and the words, 'Selected Shore Mackerel,' the year when packed, and the word, 'guaranteed,' in capital letters, all in close resemblance and palpable imitation of plaintiff's aforesaid brand and mark.

"Plaintiff further states that said words, marks, and design thus attached to the pails, barrels, and half-barrels of defendants, are each of them of such close resemblance to those of plaintiffs, that they are calcu-

lated to, and must necessarily, and do, impose upon and deceive the public, and greatly injure plaintiff in its property in said trademark, and that, by reason of the similitude between plaintiff's said trademark and that thus deceptively and fraudulently used by defendants, the mackerel of defendants is extensively purchased by the public as the mackerel of the plaintiff, to the great and irreparable injury of plaintiff; that plaintiff is informed, and believes, that defendants designedly and fraudulently use said simulated trademark for the purpose of wrongfully taking from plaintiff the trade it had built up by the superior quality of its mackerel, as aforesaid, and although plaintiff has frequently notified and requested defendants to desist from such wrongful acts, they wilfully refuse to do so."

The petition further alleges that the plaintiff has been damaged by the acts complained of in the sum of twenty-five thousand dollars, and prays that the defendants, their agents, etc., "may be enjoined and restrained from packing or selling mackerel under the name of 'Selected Shore Mackerel,' as aforesaid, and from packing or selling mackerel marked or labeled in imitation of plaintiff's trademark aforesaid, and that said defendants be required to account for all profits which they have made on their fraudulent piracy of plaintiff's trademark, and all which plaintiff would have made its own, but for such inequitable and wanton piracy, and for damages, and for such other relief as shall seem meet and proper, and as to equity may appertain."

The answer, after a general denial, avers that for twenty years a large quantity of mackerel has been caught from the sea along the coast of the New England states; that such mackerel have long been classified, according to the size and quality thereof, in four classes, to-wit: No. 1, No. 2, Selected Shore, and No. 3; that the class of mackerel called Selected Shore is in large demand by the trade, not only in and about St. Louis, but throughout the United States; that the words, "Selected Shore," have always been understood and

known as a description of a certain character and quality of mackerel so caught in large quantities along said New England coast; that the term, "Selected Shore Mackerel," has for a long time been known and recognized by the trade as indicating and representing, in a generic way, one of the trade classifications of mackerel caught as aforesaid, and has never been known or recognized as descriptive of the plaintiff's or any other person's preparation or product; that the defendants have made use of the term, "Selected Shore Mackerel," in selling and disposing of the quality of mackerel known by that name, as aforesaid, and that they have never made use of any other words connected with said term, which would in any manner indicate to the public, or to the world, that they are endeavoring to imitate any article sold or put up by plaintiff, for sale of which they have any exclusive right; that the defendants' use of the term, "Selected Shore Mackerel," is the same as has been many years used by all persons dealing in fish in the St. Louis market and throughout the United States, and no other use whatsoever.

A good many witnesses were examined on both sides and the testimony tended generally to support the allegations of the pleadings on either side, respectively. The court entered a final decree perpetually enjoining and restraining the defendants, their agents, and servants, etc., "from selling, or from offering for sale, or putting on the market, directly or indirectly, any pails, half-barrels, or other trade packages (other than such of plaintiff's own packages as may have been obtained directly or indirectly from plaintiff in the regular course of business), containing mackerel, and so branded or marked, by burning, or with stencil, or otherwise, as to resemble the brand hereinafter specifically described, now used by plaintiff in selling mackerel to the trade, namely, a brand composed of the words, 'Trask's Selected Shore Mackerel,' accompanied by the word, 'Guar-

anteed,' and the appropriate year in figures, and also appropriate words or figures indicating the number of mackerel in the pail or package, the whole arranged in circular form of about six and a half inches in diameter, substantially as follows (when used on pails):

TRASK'S

SELECTED SHORE

MACKEREL

1886.

GUARANTEED 25 MACKEREL IN THIS PAIL

"And other packages than pails, with the name of such package (either barrel or half-barrel) therein, in the place of the word 'pail.'" The decree further restrains the defendants from similarly using or employing "a circular brand or stencil" in form resembling the above described brand of plaintiff's, and containing the words:

THIS PAIL CONTAINS 25 SELECTED
SHORE
MACKEREL
:-: PACKED :-:
EXPRESSLY
FOR
FAMILY USE

"Or in similar form the words :

"Such as have heretofore been used by defendants in the sale of such mackerel; and that, as to the other matters of relief prayed in the petition herein and not granted by this decree, the said petition of plaintiff be dismissed ; and that plaintiff recover of defendants its costs herein expended, and have execution therefor."

It would appear, from the record and the argument before us, that the plaintiff's attention has been chiefly given to its claim of an exclusive trademark in the words, "Selected Shore Mackerel." But this claim cannot be sustained consistently with fundamental rules in the law of trademarks. A man cannot adopt any set of words that may happen to suit his fancy, without any reference to their purport or meaning, and then, by simply branding or otherwise placing them on every package of a commodity sold by him, acquire an exclusive right to their use as a trademark. No such right can be acquired in words which, by common understanding, are merely descriptive of the article, or of its kind, qualities, or characteristics, as these are generally known or talked about. Thus, if a grocer should brand or label the words, "Best Brown Sugar," on every parcel of that article sold by him, would it ever be supposed that all other grocers should be thereby precluded from using

the same words in connection with their sales of the same article? Such a restriction would create a monopoly in the hands of any man who might so elect, in the commonest products of universal consumption and use. *Filley v. Fassett*, 44 Mo. 176; *Alden v. Gross*, 25 Mo. App. 123. A geographical name, when used merely as a fanciful and arbitrary designation, may become a trademark. But when it is used descriptively, to indicate the place where the commodity was manufactured or produced, there can be no exclusive right in such use. For any other person may bring the same commodity from the same place, and may truly and lawfully describe its origin or nativity in the same way. *Sanders v. Utt*, 16 Mo. App. 323; *Brooklyn Company v. Masury*, 25 Barb. 416; *M'Andrew v. Bassett*, 10 Jur. (N. S.) 550.

The witnesses examined on both sides were generally men of large practical experience in the fish trade, here and elsewhere. They all testified that among dealers the term, "Shore Mackerel," was applied to the fish caught along the coast of the New England states, while those taken from the Bay of St. Lawrence, and other bays in that region, were known as "Bay Mackerel." This fact, on the principles just stated, settles the inadmissibility of an exclusive trade-mark right in the words, "Shore Mackerel." The word, "Selected," carries with it an unmistakable meaning, indicating that the articles to which it is applied have been picked out from a mass or larger number of similar articles, on account of qualities embodying superiority, in one form or another, over those that are permitted to remain. Thus, all the words in the phrase, "Selected Shore Mackerel," are purely descriptive, and there can be no rational inhibition against their use by any one who may have occasion to describe for any purpose the articles indicated by them. An attempt was made to evade the effect of these distinctions by showing that where the words, "Shore Mackerel," were used among eastern dealers, they were always accompanied by other expressions, such as "No. 1," "No. 2," "No. 3," etc.,

and that the plaintiff was the first to mark on its goods the phrase, "Shore Mackerel," without an accompanying number. But the number only indicated the grade or quality within the generic classification, and, whether present or absent, could neither take away, nor add to, the descriptive properties of the word employed to inform the public that the fish were captured somewhere along the New England sea coast, and not in the bays. A trademark, to create a proprietary right, must be, not a word or phrase which has become the common property of all mankind in their use of language to identify the thing intended, but must be a name or symbol arbitrarily chosen by the proprietor to distinguish *his* particular product or commodity from those of all other producers or dealers. By these means only can the commodity be exclusively associated, in the minds of the public, with the proprietor of the trademark.

The decree of the circuit court, it will be observed, does not allow the sufficiency, in themselves, of the words, "Selected Shore Mackerel," as a trademark entitled to protection. The restraining order forbids the use of a brand or stencil mark which shall "resemble the brand hereinafter specifically described," and the use of certain words and figures, "the whole arranged in circular form, of about six and a half inches in diameter," etc. The decree copies in *fac simile* (except as to extent of surface occupied) three separate brands, of which the first is that adopted and used by the plaintiff, and the two others are those of the defendants, before that time appearing on their packages. The details of form, style, and shape, are given in each instance, and the defendants are directed not to imitate them in the brands or marks on any packages which they may thereafter offer for sale. This action of the court was correct throughout. It is not essential to the protection [of a trader against a rival's fraudulent interference with his business, that he shall have a trademark to be pirated. "The right to a technical

trademark, in the strict sense of the word, is not necessary to entitle the complainant to relief." *McLean v. Fleming*, 96 U. S. 245. It is enough if the wrong-doing rival uses any letters, marks, shapes, devices, or symbols, so nearly like those previously employed by the complainant to distinguish his wares, that purchasers from him may be likely to believe that they are getting the goods of the complainant. Purchasers do not usually scrutinize and treasure in their memories each particular word, letter, or mark, appearing in a brand or label, but the general style and effect are more easily remembered. Two brands or labels, therefore, may differ in several matters of detail, and yet they may so resemble each other in general effect, that many people will readily take the one for the other. Imitation to such an extent as does, or reasonably may, deprive a trader. of sales or lucrative business, which would otherwise come to his hands, is a wrong for which equity will afford redress. The evidence in this case excludes all supposition that the close resemblance of the defendants' packages to those of the plaintiff in numerous and conspicuous particulars, was merely accidental, and not the result of deliberate design for a special object. The plaintiff had previously adopted packages of a peculiar form and of limited contents, with brands and marks of certain shape and design, evidently to distinguish its wares from those of all other dealers. That the defendants should afterwards adopt the same sort of packages, with like contents, and with all other peculiar marks and *insignia*, as nearly in verisimilitude as it was possible to make them, without literally copying everything in the originals, can be rationally attributed to nothing short of a purpose to capture so much of the plaintiff's trade as might be led into the defendants' hands by the fraudulent imitation, and the chances that purchasers might be deceived thereby. Such a state of facts is peculiarly within the province of equitable interposition. There can be no question of the plaintiff's substantial right to the relief

afforded by the decree. *Sawyer v. Horn,* 1 Fed. Rep. 24; *Leclanche Battery Co. v. Western Electric Co.,* 23 Fed. Rep. 276;, *Dixon Crucible Co. v. Guggenheim,* 2 Brewster, 321; *Royal Baking Powder Co. v. Davis,* 26 Fed. Rep. 293.

With the concurrence of all the judges, the judgment is affirmed.