## CAHN et al. v. GOTTSCHALK.

(Common Pleas of New York City and County, General Term. June 4, 1888.)

1. TRADE-MARKS—DESCRIPTIVE WORDS—RIGHT TO USE.

The words "Maryland Club Whiskey," arbitrarily chosen and used by plaintiffs as a designation by which a particular whiskey was to be known to dealers and the public, and not in themselves indicating any particular kind, quality, or composition of whiskey previously well known to the trade, are a proper subject for a trademark, and the fact that such words have been applied only to a certain grade of

whiskey manufactured by them, thereby necessarily distinguishing that from other grades of goods of their own manufacture, does not invalidate plaintiff's right to their use as a trade-mark.[1]

2. SAME—GEOGRAPHICAL NAMES—"MARYLAND CLUB."

The words "Maryland Club," as used in plaintiffs' trade-mark, "Maryland Club Whiskey," being the name of an institution and not a place, the rule excluding the use of geographical names as trade-marks is not applicable.[1]

3. SAME—INFRINGEMENT—WHAT AMOUNTS TO.

In 1872, plaintiffs registered in the patent-office, as a trade-mark, the words "Maryland Club Rye Whiskey, C., B. & Co., Special Trade-Mark," surrounding the seal of the state of Maryland, a monogram, and a representation of a club or clover leaf, a copy of which, printed on white paper about six inches square, their initials forming part of this design, they had been accustomed to place on each barrel of their Maryland Club whiskey. In 1882, defendant began the sale of a whiskey, painting his barrel-heads yellow, and stenciling thereon in black the words "Maryland Jockey Club Rye Whiskey," so that the words "Maryland" and "Whiskey" formed a circle around the barrel-head in letters one and one-half inches high, "Club" appearing in letters two and one-half inches high, and "Jockey" in letters seven-eighths of an inch high. No dealer's name or place of manufacture appears thereon. *Held*, that defendant was liable for an infringement.[1]

4. SAME—INFRINGEMENT—INJUNCTION TO RESTRAIN—WHEN LIES.

On a bill to restrain the use of a trade-mark consisting of words merely, it is not necessary to prove that any one has been deceived by defendant's acts, or that he even intended to deceive or defraud by his use of such words.

5. SAME—INJUNCTION TO RESTRAIN INFRINGEMENT—FALSE REPRESENTATIONS.

A representation upon plaintiff's trade-mark that the article is "pure old rye whiskey" is not falsified by proof that the whiskey is diluted with water, and that the packages containing it bear only one government stamp, while high-proof whiskey, as it comes from the distillery, bears two stamps, so as to deprive plaintiffs of relief for infringement by injunction; it not appearing that the whiskey does not possess commercial purity.

6. SAME—INFRINGEMENT—USE OF WORD "PATENTED" ON LABEL.

The use, by plaintiffs, on their registered label, of the words, "Pat. Aug. 13th, 1872," that being the date of the registry of their trade-mark, cannot be regarded as a false affirmation that the whiskey was patented, so as to deprive them of relief for infringement.

7. SAME—ACCOUNT OF PROFITS—KNOWLEDGE OF INFRINGEMENT—LACHES.

Where the plaintiff's agent, resident in this state, knew of the alleged infringement of their trade-mark for five years before action brought, plaintiffs are not entitled to an accounting of profits, by reason of laches.

8. PARTNERSHIP—USE OF WORDS "& CO." IN FIRM NAME—NON-RESIDENT FIRMS.

Under Laws N. Y. 1849, c. 347, plaintiffs, a foreign copartnership, consisting of Cahn and Belt only, may use their firm name and style of "Cahn, Belt & Co." in the transaction of their business through agents in this state; and so doing is not a violation of Pen. Code N. Y. § 363, making it a misdemeanor to use the designation "& Co." when no actual partner or partners are represented thereby.

Appeal from judgment on report of STEPHEN H. OLIN, Referee.

Action by Bernard Cahn and others, trading under the firm name and style of Cahn, Belt & Co., to restrain Jacob Gottschalk from selling whiskey under the brand of "Maryland Jockey Club," alleging that it is an infringement of their trade-mark, "Maryland Club," as applied to whiskey. Decree for plaintiffs. Defendant appeals. The following is the opinion of the referee, STEPHEN H. OLIN:

"Since 1872 the plaintiffs have sold whiskey in barrels marked 'Maryland Club Rye Whiskey.' Since 1882 the defendant has offered for sale whiskey in barrels marked 'Maryland Jockey Club Rye Whiskey.' This action is brought to restrain the use of these words. The issues tried are whether the plaintiffs have a trade-mark in the name 'Maryland Club Rye Whiskey,' whether the defendant has infringed this trade-mark, and whether the plaintiffs stand in such an attitude as entitles them to the aid of a court of equity in restraining an infringement. It is very clear upon the whole evidence that the plaintiffs applied the name 'Maryland Club Whiskey' to an article in which they dealt,

[1] On the law of trade-marks, and as to what constitutes an infringement, see Schneider v. Williams, (N. J.) 14 Atl. Rep. ——, and note; Frazer v. Lubricator Co., (Ill.) 13 N. E. Rep. 639.

as a designation by which it was to be known to dealers and to the public; and it is clear that the result has agreed with their intention, and that this article of their manufacture has been widely dealt in under the designation chosen by them, and that it is bought and sold under this designation, and thereunder is well known to the public.   The defendant contends that the name employed cannot be a trade-mark, on the ground that it indicates quality or use, and not origin and ownership, under the authority of *Corwin* v. *Daly*, 7 Bosw. 222; and *Bininger* v. *Wattles*, 28 How. Pr. 206.   In *Corwin* v. *Daly*, the words claimed as a trade-mark were ' Club-House Gin.'   It was testified that ' Club-House' had been used to designate superior quality in gin and other articles for 20 years in London and Dublin, and all the witnesses concurred in the opinion that it was a name for mere quality.   The court say: ' The evidence in this case shows the constant use, for a quarter of a century, of those words to indicate a superior quality, including the article in question, (gin,) being in fact the natural result of the high standard required in such institutions.   It meant no more than "royal," "imperial," or "princely" would do.'   In *Bininger* v. *Wattles*, BRADY, J., says: ' The plaintiff in this case has no property in the title "Old London Dock Gin."   These words do not denote the goods or property or particular place of business of the plaintiff, but only the nature, kind, or quality of the article in which he deals.' The case at bar is readily distinguished from these authorities.   The words ' Maryland Club' have not been used, so far as appears, to denote excellence, nor do they indicate that the whiskey was used in or made for the Maryland club.   They have been arbitrarily chosen by the plaintiffs to designate particular merchandise sold by them; that they have become widely known as affixed to the plaintiff's merchandise, and in this sense have come to denote their goods.   'A name which does not, in itself, indicate what an article is, or what are its qualities or component parts, but which is invented or adopted by a manufacturer solely for the purpose of distinguishing his products, and whose exclusive appropriation to that purpose in no way restricts others from properly describing similar articles produced by them, may be appropriated as a trade-mark, and protected as such.'   RAPALLO, J., *Selchow* v. *Baker*, 93 N. Y. 59, 63.

"The defendant contends that this recent and authoritative definition does not apply, because the name was not adopted solely for the purpose of distinguishing the plaintiff's products, but, on the contrary, was adopted to indicate grade or quality, and not ownership.   The evidence on this point is that in August 1872, the plaintiffs registered in the patent-office two trade-marks. One bore the words ' Maryland Club Rye Whiskey, C. B. & Co., Special Trade-Mark,' surrounding the seal of the state of Maryland, a monogram, and a representation of a club or clover leaf.   The other trade-mark was different in design, but contained the plaintiffs' names.   The name ' Maryland Club Whiskey' was used only with the first trade-mark, of which it formed a part. Under the second were sold six other grades of whiskey, which were known, respectively, as ' Original Martin,' ' Imperial Wedding,' ' Washington County Cabinet,' ' W. C. Maryland,' ' Old Continental,' and ' Standard Belt.'   One of the defendants testified that the whiskeys were of different qualities, and the names were given to them to indicate the different qualities.   Britton, the plaintiffs' New York agent, testified that the different names were used by the plaintiffs to distinguish different grades.   Upon this testimony it is claimed that the rule laid down in *Baking-Powder Co.* v. *Sherrell*, 93 N. Y. 331, applies.   The principle is there stated that there can be no exclusive right to the use of words or marks which have no relation to the origin or ownership of goods, and are only meant to indicate their quality or grade.' Now, it cannot be said that the name ' Maryland Club Whiskey' has been only used to indicate quality or grade.   The witness Britton says: ' It is used because it is a popular brand; it is used in consequence of its popularity, as

well as to distinguish it;' and the whole evidence showed that the name was used to distinguish this particular quality of whiskey, sold by the plaintiffs, from all the whiskeys,—primarily from all not made by the plaintiffs, and afterwards from all other whiskeys of their manufacture. I can see no reason why such a name should not be a trade-mark. No rule exists that a person shall not have more than one trade-mark; and, if any one has several applied to articles of a different kind or quality, he will almost necessarily use the trade-marks to distinguish from each other his goods so diversely marked. He will not, therefore, lose his rights. A trade-mark applied to only a portion of a manufacturer's products will not become invalid simply because, besides its function of denoting the origin or manufacture of the goods, it may further be used in the manufacturer's business to distinguish the goods to which it is applied from others of his goods not so marked. In *Gillott* v. *Esterbrook*, 47 Barb. 455, the defendant was enjoined from making his pens with the figure '303,' a mark used by the plaintiff to distinguish certain of his pens from those of different size and quality. The judgment was affirmed by the commission of appeals, (48 N. Y. 374,) on the ground that the number '303' was selected and used by the plaintiff as his trade-mark, to indicate, in connection with his name, the origin and ownership of the pens, and not to designate their quality merely. It is well settled that no one can appropriate words in commerce which in themselves indicate the character, kind, quality, or composition of an article of manufacture, as 'Ferro Phosphorated Extract of Calasaya Bark,' (*Caswell* v. *Davis*, 58 N. Y. 223;) nor can a trade-mark exist in arbitrary symbols which the manufacturer has only employed to designate the different qualities of his goods, as was the case with the letters 'A. C. A.' in *Manufacturing Co.* v. *Trainer*, 101 U. S. 51, or with the words 'Galen,' 'Lake,' 'Cylinder,' and 'Wayne' in *Stokes* v. *Landgraff*, 17 Barb. 608. But when the words, in themselves, do not indicate quality or composition, and have been employed to mark goods of a particular manufacturer, there is no authority for holding that they cannot be considered a trade-mark merely because, being applied only to goods of a certain quality, they necessarily distinguish goods of that quality from others made by the same manufacturer. Browne, Trade-Marks, §§ 153–160. The plaintiffs' trade-mark seems to be the name of an institution, and not a place. The decisions relating to the use of geographical names as trade-marks do not, therefore, apply. I think that the plaintiffs have established the right to a trade-mark in the words used by them.

"The defendant contends that he has not been guilty of an infringement. The plaintiffs have been accustomed to place upon the head of each barrel of the Maryland Club whiskey a copy of their filed trade-mark, printed upon white paper about six inches square. The plaintiff's initials, 'C., B. & Co.' form part of this design. Below this, and occupying rather more than half the barrel-head, are the words 'Maryland Club Rye Whiskey.' The defendant paints his barrel-heads yellow, and stencils thereon in black the words 'Maryland Jockey Club Rye Whiskey,' in such a way that the words 'Maryland' and 'Whiskey' form a circle round the barrel-head in letters an inch and one-half high; the word 'Club' appears in letters two and a half inches high; and the word 'Jockey' is printed in letters seven-eighths of an inch high. No dealer's name, or place of manufacture, is indicated on the defendant's barrel-head. The barrel-heads are not likely to be mistaken for each other by any one who examines them with any attention. On the other hand, a person who knew the plaintiffs' whiskey from its name, but was not acquainted with the form in which its trade-mark appears upon the barrel, might readily suppose that the defendant's barrel contained Maryland Club whiskey. There is no proof that any one has been deceived by the defendant's acts; but, when a trade-mark consists of words, it is not necessary to show that fraud has been accomplished or even intended. The words cannot

be used by another in any form when applied to similar articles. *Hier* v. *Abrahams*, 82 N. Y. 519. It may be said that this case is an illustration of the justice of this rule. The plaintiff and the defendant both sell whiskey in barrels to dealers, who sell it by the glass or the bottle. Often only the first purchaser will see the barrel-head, while the consumer knows the brand of whiskey only from labels upon the bottle, or from signs put in the bar-room. Although the man who purchases whiskey by the barrel may not himself be deceived, he will be willing to buy an article which, by reason of its name, will satisfy his customers' demands for plaintiffs' whiskey, and the plaintiff thus be injured. Clearly, then, it is possible, in such a case, to obtain all the benefits of an infringement by an adoption of the words of a trade-mark, with or without slight alterations, and it makes no difference in result whether or not the form in which the trade-mark appears on the original package is simulated. I think, therefore, that the defendant is shown to have infringed the plaintiffs' trade-mark, and they are entitled to an injunction, unless they have come into court with unclean hands and guilty consciences, and must therefore be denied equitable relief.

"The cases where such relief has been refused are summarized by Judge EARL in *Hennessy* v. *Wheeler*, 69 N. Y 271, 275, as ' cases where the trade-mark is used to deceive or impose upon the public, or where it is used upon a spurious, worthless, or deleterious compound, or where the business in which it is used is carried on systematically in a dishonest and fraudulent way.' It is contended that the words ' Pure Old Rye Whiskey,' forming part of the registered label, contained a false statement, because the whiskey is, as one of the plaintiffs testified, ' mixed ' or ' blended ' in Baltimore. The proof fails to show that this mixing or blending is anything more than a combination of different whiskeys, and no reason is shown for believing that the result of such a combination may not truthfully be called pure. The plaintiff Belt testified, upon cross-examination, that the barrels containing Maryland Club whiskey bore one government stamp; that whiskey just as it comes from the distillery bears two stamps; that it is distilled at high proof; and that, if the proof be reduced by water even to the extent of putting half a gallon of water in the barrel, a single stamp has to be put on. If this testimony be taken most strongly as an admission that the plaintiffs' whiskey is to some extent diluted, it falls short that the label is false. A representation made upon a trade-mark that an article is pure is to be understood as affirming purity in the sense ordinarily required in commercial dealings, not absolute purity as attested by chemical analysis. There are some admixtures which would obviously destroy the purity of whiskey; but it cannot be said that a dilution with water would have the effect, in the absence of proof that, in commercial transactions, pure whiskey is understood to be whiskey of the proof indicated by two government revenue stamps. Fraudulent dealing must be proved, and is not to be presumed. Indeed, as the fact that a barrel bears but one stamp is patent to every purchaser, it would seem improbable that the label ' Pure Old Rye Whiskey ' was understood in the trade as signifying whiskey of the purity indicated by two stamps. I think, too, that the defendant has failed to show that the statements in the label printed by the plaintiffs, to be pasted by their customers upon bottles of the Maryland Club whiskey, are false. As part of the plaintiffs' registered label there appear, in very small letters, the words, "Pat. Aug. 13th, 1872." It is claimed that this must be taken as a false affirmation that the whiskey was patented. I do not think it amounts to this. As used upon the barrels of whiskey, it is almost impossible that it could suggest to any one this idea. The words were not used in such a way as naturally to indicate the existing or present protection to the whiskey of a patent, as in *Card Co.* v. *Card Co.*, 39 Hun, 611. The words seem to indicate the date of registry of the trade-mark, and not to have been used for the purpose of deceiving the public: and this explanation, which is

·consistent with truth and honesty, is the most reasonable, and the court will ·not, for the mistaken use of these words upon a label, refuse the plaintiffs ·relief.    *Oil-Tank Co.* v. *Scott*, 33 La. Ann. 946; Browne, Trade-Marks, § 87.

"It is claimed that the plaintiffs have offended against section 363 of the Penal Code, because they have but two partners, and use the firm name of Cahn, Belt & Co.    The plaintiffs have resided in Baltimore, and carried on ·business there.    They have employed an agent in this state.    I do not believe that this penal statute can be so construed as to make what they have done in ·this respect a crime, even if chapter 347 of the Laws of 1849 does not apply to the cause.    This statute expressly allows foreign commercial copartnerships to use their styles or firms in this state.

"The agent for the plaintiffs has known, for almost five years, of the sale of whiskey under the title of 'Maryland Jockey Club.'   He has for that period known the signs and the barrel-head used by the defendant.   It would at any time have been easy for him to learn that the defendant sold the whiskey so marked.    Under these circumstances, the delay in bringing this suit is such laches as disentitles the plaintiffs to an accounting of profits.    *McLean* v. *Fleming*, 96 U. S. 245; *Beard* v. *Turner*, 13 Law T. (N. S.) 747; Browne, Trade-Marks, § 497.   The plaintiffs should have judgment granting the injunction prayed for, and with costs, but without a reference to take an account of the profits."

*Chas. A. Hess*, for appellant.    *Thos. B. Odell*, for respondents.

PER CURIAM.    All the points involved in this case have been so fully and ·satisfactorily discussed and disposed of in the opinion of the referee, from whose decision this appeal is taken, that in affirming the judgment as we feel ·bound to do, we place our affirmance upon the grounds stated in said opinion.