A. F. PIKE MANUF'G Co. *v.* CLEVELAND STONE Co. *et al.*, (four cases.)

*(Circuit Courts, D. Massachusetts and D. New Hampshire.* July 26, 1888.)

1. TRADE-MARKS—INFRINGEMENT—INJUNCTION.
Complainant and its predecessors had for many years manufactured and sold scythe stones under the trade-marks "Lamoille," "Green Mountain," "Black Diamond," "Indian Pond," "Magic," and "Willoughby Lake." Defendants, having succeeded to a company which had contracted to purchase complainant's scythe stones for a series of years, refused to carry out that contract, but, having procured quarries near to some of complainant's quarries, were manufacturing and selling scythe stones under the above names, except that they used in place of "Willoughby Lake," "Willoughby Ridge," and in place of "Black Diamond," "Diamond Gem," these names never having been used to designate stones taken from defendant's quarries. *Held,*

that a preliminary injunction would be granted restraining defendants' use of all the names, whatever the decision might be were the question alone as to the terms "Willoughby Ridge" and "Diamond Gem."[1]

**2 SAME.**

It cannot be said that the above terms, as applied to scythe stones, indicate alone quality of the stones, but they must be held to indicate a selection and care in manufacturing.[1]

**3. SAME—PLACING NAME OF JOBBER ON ARTICLE.**

That the manufacturers of scythe stones have sometimes put upon labels bearing their brand the names of jobbers to whom they have sold stones, does not show that any deceit has been practiced upon the public, because the purchaser obtained the same goods which he would have purchased if the name of the jobber had not been upon them.

**4. SAME—WHAT WILL BE PROTECTED—GEOGRAPHICAL TERM.**

The manufacturer of goods, who has for many years used as a trade-mark the geographical terms "Lamoille" and "Willoughby Lake," will be protected in their use as against one who does not carry on business in the districts so designated.

In Equity. On bill for injunction.

*Livermore & Fish* and *Chase & Streeter,* for complainant.

*Bowdoin S. Parker,* for defendants.

COLT, J. By agreement of counsel the above cases were heard together. The plaintiff asks for a preliminary injunction in each case. It appears that Alonzo F. Pike and his successor, the complainant corporation, have carried on the business of making and selling whetstones in Haverhill and Piermont, N. H., and Brownington and Westmore, Vt., since 1860, and that Alonzo F. Pike succeeded his father, Isaac Pike, who was engaged in the same business as early as 1827. The complainant has for a number of years, varying from five to twenty-eight, used as brands upon its scythe stones the names "Lamoille," "Green Mountain," "Black Diamond," "Indian Pond," "Magic," and "Willoughby Lake," and the trade in stones so branded has been extensive. The respondent, the Cleveland Stone Company, succeeded to the business of the Berea & Huron Stone Company, of Cleveland, Ohio. The latter company had entered into a contract with the complainant in 1885 to purchase its scythe stones under the above-named brands, among others, at certain prices, which was to continue until January 1, 1890. The defendants refused to carry out the contract of the Berea & Huron Stone Company, but, having acquired a quarry in Piermont, N. H., adjacent to complainant, and another in Cummington, Mass., proceeded to manufacture and sell scythe stones, marking them with the brands similar to complainant's. It is not pretended by the defendants that they purchased the right to use either of these brands, and it does not appear that either of these brands had ever been used to designate stones taken from defendants' quarries at Piermont or Cummington, nor is there any suggestion in the circulars or catalogues of defendants that their names mark a new kind or brand of stone. As suggested by complainant's counsel, no good reason is given by defendants for the appropriation of these brands, and the logical inference is that the defendant company in-

[1] See note at end of case.

tended to represent to the public that it was making the same scythe stones which were made by the complainant, and so obtain a part of complainant's trade. Under these circumstances the defendants must show a clear legal right to the use of these names, or an injunction should be granted.

As a matter of defense it is urged that the names or labels used by defendants are not the same as those employed by complainant. The defendants use the identical names, "Indian Pond," "Lamoille," "Green Mountain," and "Magic," to denote certain brands they manufacture and sell. In place of "Willoughby Lake" the title is used of "Willoughby Ridge," and in place of "Black Diamond," "Diamond Gem." The Black Diamond has a peculiar octagonal shape, and the defendants' stone is cut in substantially the same shape, and called "Diamond Gem." While, if this case stood alone, there might be some doubt about it, as a part of the scheme of these defendants to pirate the more valuable brands of the complainant, if an injunction is issued against the use of the other names, I think this should be included.

Another ground of defense is that these brands, as applied to scythe stones, are indicative alone of the quality or grit of the stone. I do not think it can be said that these names only denote quality, but I am satisfied that they also indicate a certain selection and care in manufacturing. The evidence goes to prove that the names "Lamoille," "Black Diamond," "Willoughby Lake," "Green Mountain," and "Magic" have always indicated stones manufactured by the complainant, or its predecessors or assigns, and the same is true for more than 25 years of the "Indian Pond" brand. There is some evidence that the complainant or its predecessors have sometimes put upon their labels bearing these brands the names of jobbers to whom they have sold stones. In doing this no real deceit was practiced upon the public, because the purchaser obtained the same goods which he would have purchased if the name of the jobber had not been upon them.

It is urged that "Lamoille" and "Willoughby Lake" are geographical terms. The defendants quarry stones 200 miles from Lamoille county and Willoughby Lake, and apply the names "Lamoille" and "Willoughby Ridge." Assuming that complainant cannot have a valid trademark in these names, which I do not decide, it seems to be well settled that a manufacturer will be protected in the use of a geographical name as against one who does not carry on business in the district so designated. *Blackwell* v. *Dibrell*, 14 O. G. 633, 3 Hughes, 160; *Newman* v. *Alvord*, 49 Barb. 588, 51 N. Y. 189.

Upon the facts disclosed in these cases, which bear, it seems to me, strongly against the defendants, I think the injunctions prayed for should be granted, and it is so ordered.

NOTE.

[1] TRADE-MARKS—WHAT WORDS MAY BE USED. In the case of Chemical Works v. Muth, *ante*, 524, which was a bill to restrain the use of the trade-mark "Acid Phosphate," MORRIS, J., in discussing the question as to what words may be appropriated as a trademark, says: "The true test, it appears to me, must be, not whether the words are ex-

haustively descriptive of the article designated, but whether in themselves, and as they are commonly used by those who understand their meaning, they are reasonably indicative and descriptive of the thing intended. If they are thus reasonably descriptive, and not arbitrary, they cannot be appropriated from general use, and become the exclusive property of any one. This rule is clearly explained and applied by Judge FOLGER, speaking for the court of appeals of New York in the case of Caswell v. Davis, 58 N, Y. 223. He says: 'Nor is the question whether the name used as a trade-mark will convey an exact notion of how to compound an article, so that one reading it will be able to make a like article. If the necessary effect is to inform the reader or hearer of the general characteristics and composition of the thing, it is a name which may be used with equal truth by any one who has made and offers for sale a thing compounded of the same ingredients, and who desires to express to the public the same facts. Nor does the coupling together, in a new combination, of words which before that had been used apart, and had entered into the common scientific vocabulary, give a right to the exclusive use of such combination, where it is indicative, not of origin, maker, use, and ownership alone, but also of quality and other characteristics.'"

The words "Maryland Club Whiskey," arbitrarily chosen and used as a designation by which a particular whiskey was to be known to dealers and the public, and not in themselves indicating any particular kind, quality, or composition of whiskey previously well known to the trade, are a proper subject for a trade-mark, and the fact that such words have been applied only to a certain grade of whiskey manufactured by them, thereby necessarily distinguishing that from other grades of goods of their own manufacture, does not invalidate the right to their use as a trade-mark. The words "Maryland Club," being the name of an institution and not of a place, the rule excluding the use of geographical names as trade-marks is not applicable. Cahn v. Gottschalk, 2 N. Y. Supp. 13.

See further, as to what will be protected as a trade-mark, Schneider v. Williams, (N. J.) 14 Atl. Rep. 812, and cases cited in note.