HENRY G. KEASBEY et al., Appellants, *v.* THE BROOKLYN CHEMICAL WORKS et al., Respondents.

To bring a case within the rule prohibiting the adoption of a word as a trade mark which is descriptive of the character and composition of the article to which it is applied, it must appear that the word gives some reasonably accurate and distinct knowledge upon those points.

Plaintiffs, who were manufacturers of chemical and medicinal preparations, in 1881 began the manufacture of a secret medical preparation of caffeine. To distinguish this preparation from others and to establish a trade mark, plaintiffs devised and affixed to the bottles containing the preparation labels, upon which were printed the words "Bromo-Caffeine." This label they registered as a trade mark in the patent office, in compliance with statute. The preparation so labeled was extensively advertised by plaintiffs, and they have continued to manufacture and sell the same. Defendants in 1890 began the manufacture of a similar preparation, to which they applied the name of "Bromo-Caffeine," which was affixed to the bottles containing it. In an action to restrain such use of the words as a violation of plaintiffs' trade mark these facts appeared : While the name "Bromo-Caffeine" had been applied in Germany to a chemical compound of no practical utility, and not an article of commerce or generally known, it never had, previous to plaintiffs' adoption of it, been used to designate any medicinal preparation, and there was no identity of substance or nature between the chemical and the medicinal preparation. Plaintiffs' preparation is composed of seven different ingredients, of which bromide of potassium, a compound of bromine and potassium, an alkali, is one, and caffeine is another. There is no free bromine in it. Bromine enters into combination with many different alkalies, and there are a large number of other organic compounds into which it enters. The preparation sold by defendants contained bromide of sodium instead of bromide of potassium. The evidence also disclosed that the word "Bromo" did not necessarily indicate the presence of any bromide. *Held*, that the evidence justified a finding that the words so used by plaintiffs did not impart such information as to the general characteristics of the preparation to which they applied it

as to prevent the adoption of them as a trade mark; and that plaintiffs were entitled to the relief sought.

*Caswell* v. *Davis* (58 N. Y. 223), distinguished.

(Argued April 17, 1894; decided June 5, 1894.)

Appeal from order of the General Term· of the Supreme Court in the first judicial department, made December 6, 1892, which reversed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term and ordered a new trial.

This action was brought to restrain defendants from using the words "Bromo-Caffeine," which plaintiffs claimed as a trade mark.

The facts, so far as material, are stated in the opinion.

*William G. Choate* for appellants. There having been no appeal from the order of the Special Term containing the findings of fact and directing judgment, the question as to whether or not the name "Bromo-Caffeine" is descriptive of the plaintiffs' article was not before the General Term. (*Reese* v. *Smyth*, 95 N. Y. 645.) But by the undisputed evidence it is apparent that the name "Bromo-Caffeine" is not in fact descriptive, even if that question had been before the General Term and were now open on this appeal. (*Selchow* v. *Baker*, 93 N. Y. 59.) It is no objection to the validity of a trade mark that the name has been used for another purpose, as an old name may be applied to a new use, and thus become a valid trade mark. (*Newman* v. *Alvord*, 49 Barb. 588; 51 N. Y. 189.) The foregoing rule, namely, that an old word may be applied to a new use and be a valid trade mark, obtains *a fortiori* when such old word is unknown and not in common use. (*E. S. Co.* v. *Hazard*, 29 Hun, 269; *Hier* v. *Abrahams*, 82 N. Y. 519.) It is no objection to the validity of a trade mark that it suggests without describing the thing or ingredients of which it is made. (*Burnett* v. *Phalon*, 9 Bosw. 192; *Waterman* v. *Shipman*, 130 N. Y. 310.) The term "Bromo-Caffeine" as

applied to the plaintiffs' preparation is not descriptive. (*Town v. Stetson*, 5 Abb. Pr. [N. S.] 218 ; 3 Daly, 53; *Ayer v. Rushton*, Codd. Dig. 229 ; *Caswell v. Davis*, 58 N. Y. 223 ; *Godillot v. Hazard*, 49 How. Pr. 5 ; *D. & H. C. Co. v. Clark*, 13 Wall. 311 ; 18 How. Pr. 64.) The term " Bromo-Caffeine" as used in chemistry, being a foreign word entirely, may be a lawful trade mark, although descriptive of the chemical compound in the foreign country. (*Rillei v. Carlier*, 61 Barb. 435.) Independently of any question of trade mark, the plaintiffs are entitled to relief on the ground of unfair competition. (Browne on Trade Marks [2d ed.], § 43 ; *Koehler v. Sanders*, 122 N. Y. 65 ; *Newman v. Alvord*, 49 Barb. 588; 51 N. Y. 189.) The defendants cannot defeat the plaintiffs' right by using their own name instead of the plaintiffs', on the infringing article. (*Hageman v. O'Byrne*, 9 Daly, 264.) In the courts below it was claimed by the defendants that the term " Bromo-Caffeine," having become the established name of a well-known substance, namely, the medical preparation made by the plaintiffs, it could not be claimed as a trade mark ; this is untenable. (*Selchow v. Baker*, 93 N. Y. 66 ; *C. Co. v. C. Co.*, 32 Fed. Rep. 94 ; *C. M. Co. v. Read*, 47 id. 712.) The exceptions to the judge's refusal to make certain proposed findings of fact are unimportant and in no way affect the proper decision of this appeal. (Code Civ. Pro. § 1338 ; *Davis v. Leopold*, 87 N. Y. 620 ; *Steubing v. R. R. Co.*, 138 id. 660; *Wiltsie v. Eaddie*, 4 Tr. Af. 481 ; *McCulloch v. Dobson*, 133 N. Y. 114.)

*Herman Aaron* for respondent. The name " Bromo-Caffeine" is clearly descriptive, indicating the essential ingredients of the plaintiffs' preparation. (*Caswell v. Davis*, 58 N. Y. 223.) The name " Bromo-Caffeine," being the name of a chemical compound, and describing its nature, composition and ingredients, cannot be the subject of a trade mark. (*Caswell v. Davis*, 58 N. Y. 223 ; *A. M. Co. v. Spear*, 2 Sandf. 599 ; *Fettridge v. Wells*, 4 Abb. Pr. 144 ; *Keasbey v. B. C. Works*, 41 N. Y. S. R. 437.) The plaintiffs, having no

patent, have no exclusive right to the manufacture in which they deal. (*Canhan* v. *Jones,* 2 V. & B. 218; *Thompson* v. *Winchester,* 19 Pick. 214; *James* v. *James,* L. R. [13 Eq.] 421.) The suggestion made by plaintiffs that "Bromo-Caffeine" was a chemical and not a medicine is without force. (*Caswell* v. *Davis,* 58 N. Y. 236.) The mere fact that "Bromo-Caffeine" is a combination of the words bromine and caffeine, it is submitted, is fatal to plaintiffs' claim. (*Caswell* v. *Davis,* 58 N. Y. 236.) Persons who sell articles under false names cannot invoke the protection of a court of equity on an application for an injunction. (*Fettridge* v. *Wells,* 4 Abb. Pr. 144; *Wolfe* v. *Burke,* 56 N. Y. 115.)

PECKHAM, J. This action was tried by the court without a jury, and judgment was given in plaintiffs' favor enjoining the defendants from the use of the words "Bromo-Caffeine" upon bottles containing a substance similar to that sold by the plaintiffs under that name. The injunction was granted on the ground that the defendants by such use of the above words infringed upon and violated the legal rights which the plaintiffs had acquired in the exclusive use of those words for the purposes of a trade mark.

The General Term of the Supreme Court reversed the judgment, and granted a new trial, holding that the plaintiffs had established no legal right to the exclusive use of the words. It does not appear in the order of reversal that the General Term reversed the judgment upon any question of fact, and it must, therefore, be presumed that it was not reversed upon any such question. (Code of Civil Pro. § 1338.) If there be any evidence to sustain the findings of fact by the court, those findings are conclusive upon us, and the only question remaining would be whether those facts sustained the conclusions of law based upon them. The plaintiffs are manufacturers of chemical and also of medicinal preparations. In 1873 they began the manufacture of caffeine preparations, and they say that they practically created the demand in medicine for them in this country. They testified that they

had been annoyed by having other manufacturers make similar preparations and sell them for those prepared by the plaintiffs, and so they devised their last preparation and affixed labels to the bottles containing it, on which were printed the words "Bromo-Caffeine," and the plaintiffs also complied with the law providing for registering labels as trade marks in the patent office at Washington. This use of the above words was commenced in the year 1881 by plaintiffs, and they have spent between three and four hundred thousand dollars in advertising their trade in the preparation thus sold. Notwithstanding this enormous expense thus incurred by plaintiffs their claim to the exclusive use of the words as a trade mark is denied by defendants, because, as they allege, the words used for that purpose were in common use at the time of their adoption by plaintiffs, and it is maintained that they indicate the character, quality and composition of the preparation made by plaintiffs, and that they correctly describe an article of trade so that its qualities, ingredients and characteristics would be recognized upon seeing or hearing the words.

The defendants urge that this case comes within the principles laid down in *Caswell* v. *Davis* (58 N. Y. 223), while the plaintiffs claim that it is like those cases where the trade mark, while more or less suggestive of the ingredients, characteristics or composition of the article to which it was applied, yet did not define the facts to such an extent as to thereby forfeit protection for the exclusive use of the words as a trade mark for the particular article manufactured.

Before proceeding with the question further it will be well to see exactly what facts have been found by the trial court. It has been found that the manufacture of chemicals and of medicinal preparations are separate and distinct industries. In 1881 the plaintiffs commenced and have ever since continued the manufacture of a secret preparation of caffeine, composed of certain ingredients specially set out in the findings. This is a medical preparation and made for and adapted to the relief of headaches and other nervous disorders. In order to distinguish the preparation from all others, and to establish a

trade mark, the plaintiffs designated and applied to the preparation a new, arbitrary and fanciful name, which does not describe the article or its ingredients, the name being "Bromo-Caffeine," which name had never been before used in medical science to designate any other medicine or medicinal preparation, and which name the plaintiffs thereupon applied to and have since used for the preparation sold by them, and such preparation, by the name thus adopted and used, has become widely known as the preparation of the plaintiffs, and as designating their manufacture, and the preparation has acquired a large and extensive sale in the United States and other countries, and large sums of money have been expended by plaintiffs in advertising and introducing into the market this preparation.

In the year 1890 the defendants made a preparation similar to that of the plaintiffs, and intended for the same purpose, to which they applied the name of "Bromide-Caffeine," and subsequently they changed it to the name of "Bromo-Caffeine," and this name the defendants are still using to designate their preparation. It was further found that in the year 1867 a German chemist made a compound and called the same "Bromo-Caffeine," and an account of the making of the compound, including the process of making it, was published in a chemical journal at Leipsic in 1868. The formula is also to be found as published in Watts' Dictionary of Chemistry, edition of 1872, and the article is called therein "Bromo-Caffeine." This chemical compound contains one portion of bromine, which is a virulent poison, and it is mixed in certain proportions with carbon, hydrogen, nitrogen and oxygen, and the result is that the caffeine entirely disappears. The evidence shows that the chemical compound thus described has no caffeine, but has bromine in it, and it is not an article of commerce nor is it generally known, and it is useless and valueless and unemployed, and outside the knowledge of expert or practical chemists. It is a mere curiosity of a chemical and not of a medicinal nature. While in the chemical compound the caffeine has wholly disappeared, and one atom of bromine

has replaced one atom of hydrogen, the medical compound, on the other hand, as prepared by the plaintiffs, contains no bromine at all, and does contain caffeine and bromide of potassium, and several other substances. Thus, there is no identity of substance or of nature between the "Bromo-Caffeine" of chemistry and the "Bromo-Caffeine" prepared as a medicine by the plaintiffs. The former is a worthless chemical compound, while the latter is a valuable medicine. Bromine enters into combination with many different alkalies, and, when thus combined with an alkali, it becomes a bromide of such alkali; thus, when compounded with potassium in certain proportions it is called bromide of potassium, and when with sodium it is called bromide of sodium; and so there are other organic compounds into which bromine enters besides what are termed alkalies, probably hundreds of them. The term "Bromo-Caffeine," therefore, cannot be said to indicate the presence of bromine in the plaintiffs' preparation, because in truth there is no free bromine in it, while it is equally useless for indicating the particular alkali with which the bromine has in the particular preparation combined, out of twenty or thirty different ones with which bromine will combine, some of which may not even be sedative in their effects. Further than that the words used would not show that there was necessarily any bromide used in the compound, because bromine may enter into organic compounds which are not alkalies; and the term "Bromo" does not necessarily distinguish the substance as an alkali with which the original bromine may have combined before it entered into the final preparation compounded.

There is a finding that bromide of potassium and bromide of sodium were both well known to physicians prior to 1881, as possessing certain medical properties as sedatives, and the preparation sold by the plaintiffs contained the former bromide, while that sold by the defendants contained the latter, and both were mingled with caffeine and an effervescent salt and sugar and some other ingredients. The therapeutic effect of both bromides is substantially identical.

I think the finding of the court upon these facts is well

grounded when it is said that the plaintiffs originated and applied their preparation to a new, arbitrary and fanciful name, which does not describe the article or its ingredients, and which had never been used in medical science to designate or name any other medicine or medical preparation.    There is evidence which sustains the finding, and on this appeal the finding is conclusive upon us.    The trade mark does not impart information as to the general characteristics and composition of the plaintiffs' preparation at least to such an extent as to render the trade mark itself invalid on that ground.    It is not descriptive to any such extent as that.    The name may and probably would suggest to any intelligent man a suspicion or perhaps a belief that the article had bromine or a bromide and caffeine in it in some conceivable form, together with possibly many other substances, but there is nothing in the name which necessarily suggests as the basis of this preparation any particular bromide out of the twenty odd which bromine may form with different alkalies, nor would it necessarily suggest that it was a bromide at all, for it might be one of the hundreds of other organic compounds with which bromine combines. Upon these facts how can it be said that by the use of these words there is any such description of the article as indicates to the public the principal ingredient of which the article is composed?

The word " Bromo " cannot be claimed as descriptive of the ingredient bromine, because the word is also used with regard to substances which have no bromine in them, but only some one of the different bromides.    Neither does the word describe any particular bromide.    Neither does it give any clue to the substance other than a bromide with which the bromine may have been compounded.    The word fails in fact to give information as to what the ingredient is, further than a possibility as above suggested.    This failure is very important, for unless the word give some reasonably accurate, some tolerably distinct knowledge as to what the ingredient is, it is clear that it is not descriptive within the meaning of that term as used with reference to a trade mark.    When spoken of with refer-

ence to a preparation of which it forms a part, bromide of potassium is one ingredient, while bromide of sodium is another and a totally different ingredient, although both are substantially identical in their therapeutic effect. They are still and nevertheless distinct and different ingredients. In addition, however, is the fact that the word "Bromo" does not particularize sufficiently even to indicate that the ingredient is either one or the other of those two bromides out of the twenty or thirty bromides with which bromine may combine. And there is no finding and no proof that even the therapeutic effect of all the other bromides is either substantially or at all identical each with the other or with the two bromides above mentioned. All that any one could do on reading these words would be to guess that probably the article contained some caffeine and some bromine free or combined with some bromide or else with some other organic compound which bromine will combine with, and as to which of these almost infinite possibilities was the fact, the word "Bromo" would convey no information whatever.

The testimony of Dr. Hamilton is not contrary to this statement. He said he did not know the ingredients composing the preparation, but supposed it might contain some preparation of the Bromo, but he did not know what it contained. He would understand from the use of the word "Bromo" that some form of bromide and caffeine are combined; the phrase "Bromo-Caffeine" vaguely conveyed to his mind that there was some preparation of bromide and caffeine together. The phrase, he said, was a term and not a scientific one, and he could not tell by the word "Bromo" what particular substance the bromide had combined with. The evidence shows that the word "Bromo" does not necessarily indicate the presence of any bromide. The word is just as descriptive and just as applicable in case bromine itself were the substance combined in the compound and not a bromide at all. The word could only be said to inform one of the fact that bromine or some kind of bromide had entered into and formed part of the compound, but upon the question whether it was

bromine or one of the many different kinds of bromides, the word " Bromo " would give no knowledge whatever. A name which furnishes no information on this point cannot be said to be so far descriptive in its nature as to prevent its adoption as a trade mark so far as this question is concerned.

We think there is a distinction between the facts in this case and that of *Caswell* v. *Davis* (*supra*). In this case the term perhaps suggests that some one among the hundreds of substances that bromine may combine with has been used in such combination together with caffeine. There are, however, some seven different ingredients in the plaintiffs' preparation, and there is no free bromine among them, and there is no evidence as to what the substance is which the bromine (if any) had combined with before being used in the preparation, and so it is plain that the words " Bromo-Caffeine " do not in fact describe the ingredients or even give any clear general idea as to what they are.

The plaintiffs adopted the words as a trade mark after consultation with counsel and before the name was in use in the United States as applied to any substance, while in the *Caswell* case the combined words were not applied to the medicine as a name to designate the ownership, origin or particular manufacture of the preparation, but solely to indicate to physicians and the community of druggists the names of the three principal ingredients of which it was composed, and these three principal ingredients were known in *materia medica* and had been prescribed by physicians many years prior to 1860. The words did in fact show forth the quality and composition of the article sold. The name adopted was " Ferro-Phosphorated Elixir of Calisaya Bark," and it was said that they did indicate to the medical profession, to the community of druggists and to the public, the principal ingredients of which the article was composed. It also substantially indicated that the Calisaya bark was treated or had been subjected to the action of the two substances, iron and phosphorous, both of them old and well-known names of articles used in medicine. All through the opinion of Judge

FOLGER it is seen that the idea is prominent that the words did indicate the chief ingredients of the article, and it was only the particular strength of the different substances in their application to the bark that the words did not convey an exact knowledge of. In this case the object was to coin a name which should not be descriptive.

We think this case comes within the doctrine of those cases; which have protected the words as a trade mark although they suggested more or less the composition, quality or characteristics of the article. Some of the cases are alluded to in the opinion of RAPALLO, J., in *Selchow* v. *Baker* (93 N. Y. 59) and the distinction is drawn in *Electro-Silicon Co.* v. *Hazard* (29 Hun, 369).

Nor do we think the words were in common use when applied by plaintiffs.

They had been used to designate a certain chemical compound as hereinbefore quoted from the findings of the trial judge, but, as stated therein, that compound was not in use and had no known useful quality and was but a chemical curiosity, and the words had no known significance in the medical world at the time when they were appropriated by the plaintiffs.

We think that there is evidence sufficient in this case to support the findings of fact made by the trial court and that such findings justify the conclusions of law based upon them.

The defendants should be enjoined from the further use of a name which the plaintiffs had legally appropriated as a trade mark many years prior to the time when the defendants commenced its use. We can see no reason for an appropriation of this name by the defendants other than that arising from an effort to convert to their own use and benefit the labor and skill of another. As this name adopted by plaintiffs does not describe the ingredients entering into defendants' preparation, an injunction restraining the latter from the use of the name adopted by the plaintiffs can inflict no injustice upon defendants. And they should not be permitted to acquire any advantage to themselves by the unlicensed use of the plaintiffs' trade mark. It could only be used by the defendants for

a fraudulent and illegal purpose and the plaintiffs should be protected from such an improper use.

The order of the General Term should be reversed and the judgment entered upon the decision of the trial judge should be affirmed, with costs in all courts to the plaintiffs.

All concur.

. Ordered accordingly.