TRINIDAD ASPHALT MFG. CO. v. STANDARD PAINT CO.

(Circuit Court of Appeals, Eighth Circuit. August 11, 1908.)

No. 2,621.

1. TRADE-MARKS AND TRADE-NAMES — NAMES SUBJECT TO APPROPRIATION — "RUBEROID."

The word "Ruberoid" cannot be appropriated as a trade-mark for a roofing made of felt saturated with a gum composed of the residuum of animal fats, and which is in the nature of soft, flexible rubber; such word not being a fanciful, arbitrary term, but merely a misspelling of "rubberoid," which is a common descriptive term signifying a resemblance to rubber in appearance or characteristics, and the use of which belongs to the public.

[Ed. Note.—Arbitrary descriptive or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.]

2. SAME—UNFAIR COMPETITION—USE OF SIMILAR DESCRIPTIVE WORDS.

A manufacturer. which adopted the word "Ruberoid" as a trade-mark for a roofing material, which trade-mark was invalid as an attempt to appropriate the descriptive term "rubberoid," is not entitled to an injunction on the ground of unfair competition against another manufacturer because of its use of the name "RubberO" to designate a similar roofing, which was plainly marked with defendant's name as manufacturer, and where there was no imitation of the form, dress, or appearance of complainant's packages, beyond the fact that both complainant and defendant, in common with all manufacturers of similar roofing material, put up their product in rolls.

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

W. B. Homer, for appellant.

John F. Green (F. N. Judson, on the brief), for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. About the year 1891 the Standard Paint Company, a West Virginia corporation, commenced to make and put upon the market a prepared roofing material of felt, saturated with a gum composed of the residuum of animal fats. Because of the close resemblance of the gum to rubber and the durability and flexibility of the roofing, it then adopted the word "Ruberoid" as a trade-name, and in 1901 caused it to be registered in the Patent Office as a trade-mark. In the application for registration it was said the trade-mark was appropriated to solid substances in the nature of soft, flexible rubber in the form of flexible roofing, etc. It extensively advertised, and built up a large business. In 1904 the Trinidad Asphalt Manufacturing Company, a Missouri corporation, put upon the market a roofing of similar appearance and of similar composition, except that vegetable oils were used in treating the felt, and it applied thereto the name "RubberO." There were about 40 other concerns engaged in that business, many of whose products resembled those of complainant and defendant, and because they possessed some of the characteristics of India rubber were called and known to the trade as "rubber roof-

ings," though in none of them was rubber an ingredient. The Standard Company sued the Trinidad Company for an injunction and an accounting on two grounds: First, infringement of trade-mark; and, second, unfair competition, in that the use by defendant of the word "rubbero," its similarity to "ruberoid," and the form and dress of defendant's roofing as put upon the market were calculated to and did deceive the public, when buying it, into the belief they were buying the roofing of complainant. The trial court gave the complainant a decree, and the defendant appealed.

First, as to complainant's trade-mark. It is clear that by the adoption of the word "ruberoid" as a trade-mark it was sought to appropriate the exclusive use of the term "ruberoid," and complainant's rights are to be judged accordingly. If the latter cannot be appropriated as a trade-mark, because it is a common descriptive word, and its use, therefore, belongs to the public, complainant cannot maintain its claim to the one it selected. A public right in "ruberoid" and a private monopoly of "ruberoid" cannot co-exist. They are inconsistent and trespass upon each other, and under the law of trade-mark the latter must give way. To the contention that "ruberoid" is fanciful or arbitrary it must be said that no one can restrict or destroy the public right by the coinage and monopoly of a word that is a near imitation of one the use of which is open to all for the truthful description of articles of trade and commerce. The act of Congress (Act March 3, 1881, c. 138, § 1, 21 Stat. 502 [3 U. S. Comp. St. 1901, p. 3401]) prohibits the registration of a trade-mark so closely resembling that of another as to create mistake or confusion in the mind of the public, and certainly the public is entitled to like protection against encroachments upon a common descriptive term. To the visual perception there is a close resemblance between "rubberoid" and "ruberoid," and the pronunciation is so nearly identical the difference would not ordinarily be noticed by the attentive ear. They are substantially alike in suggestion. Nothing can be gained by the mere dropping of a "b" from the appropriate word expressive of the advertised qualities of complainant's product. For similar reasons it was held that the word "Matzoon" could not be appropriated as a trade-mark for a medicinal beverage because of its similarity to "Madzoon"; the latter being the transliteration of the ancient Armenian name of the preparation. Dadirrian v. Yacubian, 39 C. C. A. 321, 98 Fed. 872. In Goodyear Co. v. Rubber Co., 128 U. S. 598, 604, 9 Sup. Ct. 166, 168, 32 L. Ed. 535, it was said:

"The designation 'Goodyear Rubber Company' not being subject to exclusive appropriation, any use of terms of similar import, or any abbreviation of them, must be alike free to all persons."

Because of its very structure and meaning the word "ruberoid" is not a fanciful one, and it owes nothing to complainant for its existence or its descriptive relevance to the roofing productions in question. It was a part of our common vocabulary long before complainant began operations, the Patent Office discloses applications of it to compositions resembling but not containing rubber, and it had found its way into the lexicons. The suffix "oid" signifies likeness or resem-

blance to the thing indicated by the word to which it is attached. Thus "granitoid" means like granite, "crystalloid" like crystal, and "rubberoid" like rubber. The latter is the common English term signifying a resemblance to rubber in appearance or characteristics. Indeed, it would appear that many of the rubber roofings, so called, that are common in the markets, could more appropriately and truthfully be described as "rubberoid."

It is the settled rule that no one can appropriate as a trade-mark a generic name, or one descriptive of an article of trade, its qualities, ingredients, or characteristics, or any sign, word, or symbol which, from the nature of the fact it is used to signify, others may employ with equal truth. Canal Co. v. Clark, 13 Wall. 311, 323, 20 L. Ed. 581; Goodyear Co. v. Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535; Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247. A reference to a few of the many cases in which it has been applied may more clearly signify its purport than the bare statement of the rule itself. The following have been held to be descriptive terms, and therefore not the subject of trade-mark: "Nourishing Stout" as applied to a malt liquor (Raggett v. Findlater, L. R. 17 Eq. 29); "Gall Cure" to a medicine (Bickmore, etc., Co. v. Mfg. Co., 67 C. C. A. 439, 134 Fed. 833); "Whirling Spray" to a syringe (Marvel Co. v. Pearl, 66 C. C. A. 226, 133 Fed. 160); "Standard" and "Computing" to scales (Computing Scale Co. v. Standard Computing Scale Co., 55 C. C. A. 459, 118 Fed. 965); "Steel Shod" to boots and shoes with soles studded with nails (Brennan v. Dry Goods Co., 47 C. C. A. 532, 108 Fed. 624; Id. [C. C.] 99 Fed. 971); "Aluminum" to a manufactured article composed in part of that metal (American Washboard Co. v. Mfg. Co., 43 C. C. A. 233, 103 Fed. 281, 50 L. R. A. 609; "Instantaneous" to a tapioca ready for use (Bennett v. McKinley, 13 C. C. A. 25, 65 Fed. 505); "Iron Bitters" (Brown Chemical Co. v. Meyer (C. C.) 31 Fed. 433, affirmed in 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247); "Acid Phosphate" (Rumford Chemical Works v. Muth [C. C.] 35 Fed. 524, 1 L. R. A. 44); "Indurated Fiber" to wares made of wood pulp (Indurated Fiber Co. v. Amoskeag, etc., Co. [C. C.] 37 Fed. 695); "Cramp Cure" (Harris Drug Co. v. Stucky [C. C.] 46 Fed. 624); "Hygienic" to underwear (Jaros, etc., Co. v. Fleece Co. [C. C.] 65 Fed. 424); "Valvoline" to lubricating or valve oil (Leonard v. Wells, 53 L. J. Ch. 233, 32 W. R. 532); "Croup Tincture" (In re Roach, 10 Off. Gaz. 333); "Crack-Proof" to rubber goods (In re Goodyear Rubber Co., 11 Off. Gaz. 1062); "Crystalline" to artificial stones (Ex parte Kipling, 24 Pat. Off. Gaz. 899); "Fireproof Oil" (Scott v. Standard Oil Co., 106 Ala. 475, 19 South. 71, 31 L. R. A. 374); "Aromatic Schiedam Schnapps" to gin (Burke v. Cassin, 45 Cal. 467, 13 Am. Rep. 204); "Snowflake" to crackers and biscuit (Larrabee v. Lewis, 67 Ga. 561, 44 Am. Rep. 735); "Cough Remedy" (Gilman v. Hunnewell, 122 Mass. 139); "Selected Shore Mackerel" (Trask v. Wooster, 28 Mo. App. 408); "Rye and Rock" to a mixture of rock candy and rye whisky (Van Beil v. Prescott, 82 N. Y. 630); "Dessicated Codfish" (Town v. Stetson, 3 Daly [N. Y.] 53); "Headache Wafers" (Gessler v. Grieb, 80 Wis.

21, 48 N. W. 1098, 27 Am. St. Rep. 20); "Microbe Killer" (Alff v. Radam, 77 Tex. 530, 14 S. W. 164, 9 L. R. A. 145, 19 Am. St. Rep. 792). "Rubberoid" easily falls in the above class, when applied to articles with no rubber in their composition, but appearing to have and possessing its qualities and characteristics. There are cases in which words and phrases have been upheld as trade-marks upon the ground that they were suggestive, rather than descriptive; but they have no application here.

Even a proper name may in time become by common acceptation the generic designation of an article, and after the expiration of the monopoly arising from letters patent become publici juris, like an ordinary descriptive term, and therefore not appropriable as a trade-mark. This was held to be so of "Rahtjen's Composition" and a preparation of paint (Holzapfel's Co. v. Rahtjen's Co., 183 U. S. 1, 22 Sup. Ct. 6, 46 L. Ed. 49); "Singer" and the sewing machine (Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118); "Goodyear Rubber" and a class of goods made by the process known as Goodyear's invention (Goodyear Co. v. Rubber Co., 128 U. S. 598, 602, 9 Sup. Ct. 166, 32 L. Ed. 535); "Webster" and the dictionary (Merriam v. Pub. Co. [C. C.] 43 Fed. 450; Merriam v. Clothing Co. [C. C.] 47 Fed. 411); "Fairbanks" and a make of scales (Fairbanks v. Jacobus, 14 Blatchf. 337, Fed. Cas. No. 4,608); "Harvey" and "Worcestershire" and the table sauces of those names (Lazenby v. White, 41 L. J. 354; Lea v. Deakin, 11 Biss. 23, 15 Fed. Cas. 95, Case No. 8,154). In the same way a fanciful word may become the very name of the thing to which in the beginning it was arbitrarily applied. Before this controversy arose complainant publicly declared it selected the word "ruberoid" for a trade-mark, because of the resemblance of its product to rubber. It advertised the fact to the world, and pointed to the common characteristics. The truth of its statement is so obvious, and the connection between the misspelled name and the thing so manifest, we need not search for some remote likeness to other words found in the lexicons that have no possible application to the artificial roofing in question. That the roofing of complainant possesses characteristics of rubber in composition is plain to the most ordinary inspection, and it is also plain that the average person would take the word adopted as signifying that fact. It seems altogether clear that complainant's trade-mark is invalid.

The rule as to unfair or fraudulent competition does not necessarily involve the right to the exclusive use of a word or symbol, for though one's trade-mark may be invalid the circumstances attending its use by another may be such as to constitute an invasion of his rights and a fraud upon the public. It proceeds upon ethical considerations and has its foundation in business honesty. The evil against which it is directed has a twofold aspect, the deception of the purchasing public, and the consequent piracy of the reputation and good will which a competitor has earned by fair conduct and the quality of his goods, and which constitute a valuable asset in his business. Briefly stated, the rule is that one should not be permitted to sell his goods as the

goods of another. If he uses a generic name or descriptive term which a competitor has employed before him, he should not by other words, signs, or symbols, or by the dress, appearance, or form of package, so imitate his competitor's course or way as to deceive the ordinary purchaser, giving such attention as purchasers usually do. But all must submit to the competition which comes alone from the fair and truthful employment of generic names and terms descriptive of the qualities and characteristics of articles of trade and commerce, unaccompanied by other acts designed to induce confusion and error in the mind of the public.

We discover nothing in defendant's conduct justifying the charge of unfair competition. In the last analysis the charge rests solely on the use of the word "rubbero" and the similarity thereof to "ruberoid," or its equivalent, "rubberoid." Complainant has no monopoly of the resemblance to rubber of roofing that has none in its composition, and obviously it cannot secure a monopoly of the appropriate term descriptive of that resemblance by invoking the doctrine of unfair competition. The word "rubberoid" is part of the common heritage, and all who can truthfully apply it to their products are entitled to do so, taking due care that they do not otherwise trespass upon the rights of competitors. The defendant being entitled to the proper use of the word "rubberoid," the complainant cannot justly complain of the use of "rubbero." That complainant marketed its roofing in rolls and defendant did the same is not significant. That was the usual, ordinary course of those engaged in the business. The form was not peculiar or fanciful, but was one of convenience, due to the physical characteristics of the material. It is as natural that such roofing should be in rolls as carpet, matting, or paper, or as dress fabrics in bolts, thread on spools, or matches in boxes. Similar considerations apply to the cutting of the roofing into strips of convenient width and the designation of the weight or thickness thereof. There was no imitation of the arrangement, color, design, or general appearance of the wrappers and markings on the packages. On the contrary, those of defendant were in such marked contrast to complainant's as to repel all suggestion of design on the part of the former to misrepresent the origin or ownership of its product. Moreover, its name and address were plainly printed on the labels. It would be a result unsustained by reason or authority if one, after vainly attempting through a trademark to secure a monopoly of a generic or descriptive word, should nevertheless be granted one by decree of a court, applying the doctrine of unfair competition to those who simply used the word in the appropriate naming or description of their goods, but in other respects plainly distinguished them from the goods of their competitor. Yet that is practically what complainant is attempting in the second branch of its case, for it has no other basis than the mere use by defendant of the word "rubbero." If at complainant's instance a court should enjoin the use of "rubbero," then logically none of the large number of other manufacturers who make roofings resembling rubber can lawfully call their products "rubber roofing" or "rubberoid roofing," because of similarity to the term selected by complainant, and thus com-

plainant would be allowed to fence off and appropriate to its exclusive use a part of our common vocabulary. As well might a manufacturer be decreed the exclusive right to call his sugar sweet or his vinegar sour.

In Singer Mfg. Co. v. June Mfg. Co., supra, the Supreme Court held that the name "Singer" had become the generic designation of a certain class of sewing machines, and therefore the Singer Company could not appropriate it as a trade-mark, though it had exclusively used it many years. It also expressly recognized the right of any manufacturer of that type of machines to apply the name "Singer" thereto, provided it was clearly and unmistakably specified in connection therewith that they were the product of the maker, and not of the Singer Company. 163 U. S. 207, 16 Sup. Ct. 1016, 41 L. Ed. 131. The requirements of honest competition mentioned by the court in that case were fully met by the defendant here.

In Centaur Co. v. Heinsfurter, 28 C. C. A. 581, 84 Fed. 955, an injunction was sought restraining the defendant from using the word "Castoria." It was held that the word had become the descriptive name of the medicine to which it was applied, and therefore plaintiff could not appropriate it as a trade-mark, though it had long enjoyed the exclusive use of it. Mr. Justice Brewer, speaking for this court, said of the claim of unfair competition:

"But, as we have heretofore observed, in the present case, outside of the use of the word 'Castoria,' there is nothing to mislead the public into the belief that the Castoria manufactured and sold by the defendants was in fact manufactured and sold by the plaintiff. On the contrary, the information was full and specific that the defendants were the manufacturers and vendors."

This excerpt aptly fits the case at bar. True, in both these cases there were patents which had expired, and the names "Singer" and "Castoria" had become the generic names of the articles during the existence of the monopoly. When the patents expired, and the exclusive right to manufacture ceased, the right to use the names also became a public one through a species of dedication. But in respect of the question now being considered those cases are indistinguishable in principle from the one before us. It is immaterial that names like "Singer" and "Castoria" became public property by acquiescence of those who first employed them, instead of being naturally so by reason of structure and original meaning, as is the case with an ordinary appellative like "rubberoid." The important thing is the fact that they are public property, not how they became so. If they are, it follows from that quality alone that all may truthfully apply them to their products, and that no one can lawfully monopolize them. Though the cases cited also involve other questions, they recognize and enforce the established rule that unfair competition cannot arise from the mere use of words belonging to the public, accompanied by a fair and truthful statement of the ownership and source of manufacture.

In Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247, the rule was expressly applied. The complainant had for a long time made "Brown's Iron Bitters," when defendant put upon the market a medicine which he called "Brown's Iron Tonic."

The court, after first observing that there could be no valid trade-mark in the words "Iron Bitters," addressed itself to the claim of unfair competition, and after considering the similarities of the form and dress of the packages found that they afforded no ground for complaint. So, as in the case at bar, the question finally resolved itself into one of the mere use of complainant's words, or words similar thereto. The court said:

"But if the words 'Iron Bitters' cannot be lawfully appropriated as a trademark, it is difficult to see upon what theory a person making use of these or similar words can be enjoined. We understand it to be conceded that these words do not in themselves constitute a trade-mark. It follows, then, that another person has the right to use them, unless he uses them in such connection with other words or devices as to operate as a deception upon the public."

And then the court disposed of the addition of the patronymic "Brown" by finding from the facts in the case defendant had the right to use it also. The same rule was applied on the circuit in Brown Chemical Co. v. Myer (C. C.) 31 Fed. 453, by Judge Thayer, and in Gessler v. Grieb, 80 Wis. 21, 48 N. W. 1098, 27 Am. St. Rep. 20, and Alff v. Radam, 77 Tex. 530, 14 S. W. 164, 9 L. R. A. 145, 19 Am. St. Rep. 792.

In Reddaway v. Banham, L. R. App. Cas. [1896] 199, the decree directed by the House of Lords to be entered by the lower court recognized the right of defendants to use the name "camel hair belting" under restrictions similar to those imposed by the Supreme Court in the Singer Case. By long use the name had come to signify plaintiff's goods. The decree which was directed (page 222) was "for an injunction restraining the defendants and each of them from using the words 'camel hair' as descriptive of or in connection with belting manufactured by them or either of them, or belting (not being of the plaintiffs' manufacture) sold or offered for sale by them or either of them, *without clearly distinguishing such belting from the belting of the plaintiffs*." (The italics are ours.) In respect of distinguishing, Lord Morris said:

"That, to my mind, is obviously done when the respondents put prominently and in a conspicuous place on the article the statement that it was camel hair belting manufactured by themselves. Having done so, they would, as it appears to me, fully apprise purchasers that it was not Reddaway's make, by stating that it was their own." Pages 221, 222.

The decree is reversed, and the cause remanded, with directions to dismiss the bill.

SANBORN, Circuit Judge (dissenting). In 1891 the complainant commenced to manufacture a roofing to which it applied the tradename "Ruberoid." Its officers and agents pronounce this word "ruber-oid." Neither this word nor the word "rubberoid" had ever been used to designate or describe this or any other roofing at that time. In 1901 the complainant registered this word "ruberoid" as its trademark. It advertised and promoted the sale of its ruberoid until its sales in the year 1904 amounted to $950,000, its roofing was known, ordered, and sold throughout the United States and foreign countries by the name "ruberoid," and that word had come to mean in the trade

the complainant's product. That word indicated to the trade the origin and the ownership of the roofing. Thereupon the defendant in 1904 commenced to make and sell a similar roofing under the name of "Rubbero," and the complainant's sales decreased $8,000 in the territory where the latter article was sold, and nowhere else. The Circuit Court was of the opinion that the word "ruberoid" was a valid trademark, that the defendant infringed upon it and was guilty of unfair competition, and it enjoined the use of the word "rubbero" in competition with the complainant's product. The findings and conclusion of the chancellor in cases of conflicting evidence prevail, unless it clearly appears that he has fallen into an error of law or a plain mistake of fact, and I find myself unable to concur in the view of the majority that the court below was guilty of either.

The striking similarity between the words "rubbero" and "ruberoid" the many dissimilar names open to the defendant, the long-established reputation and extensive sales of complainant's "ruberoid," the evident probability and the evidence of confusion of the trade by the use of the word "rubbero," and the decrease of complainant's sales after the defendant commenced to use it, leave no doubt in my mind that the court below was right in its conclusion that the purpose of the conception and use of the word "rubbero" by the defendant was to palm off its product as that of the complainant, and that it has been accomplishing its purpose. The arguments in support of the position that the defendant has the equitable right to palm off its roofing as the ruberoid roofing of the complainant by the use of the word "rubbero," as I understand them, are substantially these: (1) That the word "ruberoid" is substantially identical with the word "rubberoid"; that the word "rubberoid" is a public heritage, incapable of monopolization as a trade-mark; hence that the word "ruberoid" is so, and the defendant is entitled in equity to take the complainant's trade in its ruberoid roofing by the use of the word "rubbero." (2) That the word "ruberoid" is descriptive; that it cannot become a trade-mark; and hence the defendant may use the word "rubbero" to sell its goods as the ruberoid of the complainant. (3) That the word "ruberoid" is a generic term; and hence the defendant may use the word "rubbero" to sell its goods as the ruberoid of the complainant. (4) That the defendant does not palm off its goods as the goods of the complainant by the simulation of the dress of complainant's goods, or by any other means than the use of the word "rubbero"; and hence it should be permitted to use the word "rubbero." (5) That if the defendant is enjoined from using the word "rubbero," other manufacturers could not be logically permitted to call their products "rubber roofing" or "rubberoid roofing"; and hence the defendant should be permitted to use the word "rubbero" to take from the complainant its trade in ruberoid roofing. (6) That where a manufacturer of a patented product has made his trade-name the generic name of his manufacture during the term of his patent, as in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 178, 186, 189, 201, 204, 16 Sup. Ct. 1002, 41 L. Ed. 118, and the "Castoria" case (Centaur Company v. Heinsfurter, 84 Fed. 956, 28 C. C. A. 581), other manufacturers of the same product may use this generic name

on condition that they clearly make known to purchasers that it is not the manufacture of the original patentee; hence the defendant may use the word "rubbero" to sell its goods as the ruberoid of the complainant, notwithstanding the fact that the complainant's manufacture was never patented, and the word "ruberoid" has always remained the designation of its particular product, and never became the generic name "rubber roofing." Some of the reasons why these contentions have not proved persuasive to me are these:

1. When the complainant adopted the word "ruberoid" as its trademark in the year 1891, and before it taught the public and the trade by its advertisements and sales that this word meant its particular make of rubber roofing, this word "ruberoid" was not, in my opinion, substantially identical with, but was distinctive from, the word "rubberoid." It was not pronounced and did not sound the same. "Ruber-oid" sounds as different from "rubberoid" as "ruble" from "rubble." It was not spelled in the same way, and when written or printed it had a strikingly different appearance. There is no more striking method of differentiating words than by changing the spelling. Witness "uneeda" in contrast with "youneeda." The absence of a single letter destroys the identity and the similarity of appearance and signification of many words. "Tough" is not "trough"; "cow" is not "crow"; "rob" is not "robe"; "robin" is not "robbin"; "robing" is not "robbing"; "ruble" is not "rubble"; and "ruberoid" is not "rubberoid." The root of "ruberoid" is "rubere," to be red, and some of its derivatives are "rubify," "rubific," "rubescent," "rubicund," "rubidity." The root of "rubberoid" is "rub," to apply pressure with motion. Caoutchouc acquired the name "rubber" because it was first used to erase pencil marks by rubbing. "Ruberoid" did not have, and never has had, the same meaning as "rubberoid." The generic name of the product of the complainant, of that of the defendant, and of those of more than 30 other manufacturers, is "rubber roofing." Some of the trade-marks of the products of specific manufacturers of this rubber roofing are "Ruberoid," "Paroid," "Indruroid," "Lasticite," "Perfection," "Galvanized," "Original." The evidence in the record in hand is clear and uncontradicted that the word "ruberoid" signified nothing to those who first saw and heard it until the complainant taught the trade that it meant its specific manufacture of rubber roofing, and that this word has never become the generic name of such roofing, which has always continued to be rubber roofing; nor has it ever signified anything but the origin and ownership of the complainant's particular product. The evidence is also undisputed that the word "rubberoid" has never signified any kind of rubber roofing. Its definition in the Century Dictionary is "a trade-name for an imitation of hard rubber," and it has signified solid articles, like the handles of knives and forks, but never felt saturated with the residuum of animal fats, or any other soft or flexible roofing.

The facts of this case, therefore, neither prove nor indicate to my mind that the complainant sought to appropriate the exclusive or any use of the word "rubberoid" by its adoption of the word "ruberoid" as its trade-mark, and they equally fail to show, in my opinion, that a

public right in "rubberoid" and a private right in "ruberoid" may not lawfully coexist. On the other hand, they seem to me to show conclusively that, if the word "rubberoid" was a public heritage and incapable of monopolization, the word "ruberoid" was not of that character, but was a fanciful term, coined by the complainant, and its appropriation and use as a trade-mark in no way impinged upon the free use by the public of the word "rubberoid," and this because the former word never had the same sound, nor the same spelling, nor the same appearance, nor the same meaning, as the latter, but was a new and fanciful term, coined and used to mark a particular product, which has never yet fallen within the meaning of the word "rubberoid." Moreover, the defendant does not use the word "rubberoid," and the question here is, not whether it may avail itself of the common heritage in that word and its meaning, but whether or not it has a right to coin and use the fanciful word "rubbero" to palm off its goods as those of the complainant—a right which is superior in equity to the right of the complainant to enjoin and prevent the perpetration of such a wrong.

2. Is the defendant entitled to the use of the word "rubbero" to sell its goods as the ruberoid of the complainant because the word "ruberoid" is descriptive, and for that reason not subject to monopolization as a trade-mark? The question is not whether or not the word "ruberoid" described the complainant's roofing in 1904, when the defendant sought to appropriate its trade by the use of the word "rubbero," nor is it whether or not this word "ruberoid" describes the complainant's product now, but it is whether or not it so clearly described it, or its qualities, or its characteristics, at the time it was first adopted, that it would have been recognized at that time by men of ordinary experience in the trade upon seeing or hearing the word for the first time. Wellcome v. Thompson & Capper, 1 L. R. Chan. Div. [1904]. 736, 742, 749, 750, 754; Keasbey v. Chemical Works, 142 N. Y. 467, 471, 474, 475, 476, 37 N. E. 476, 40 Am. St. Rep. 623.

Again, words are disqualified for trade-marks only when they are so accurately descriptive of the qualities, ingredients, and characteristics of the articles that the latter would be recognized by men of ordinary intelligence upon seeing or hearing the words when first applied. Keasbey v. Chemical Works, 142 N. Y. 467, 37 N. E. 476, 40 Am. St. Rep. 623. Of this nature are the words adjudicated in the cases cited by the majority—"Lackawanna" as a description of the valley of that name, whence Lackawanna coal was derived (Canal Company v. Clark, 13 Wall. 311, 323, 20 L. Ed. 581); "Goodyear Rubber," used after, as the Supreme Court said, these words had become "terms descriptive of well-known classes of goods produced by the process known as Goodyear's invention" (Goodyear Co. v. Goodyear Rubber Company, 128 U. S. 598, 602, 9 Sup. Ct. 166, 32 L. Ed. 535); "Iron Bitters," in a case in which the word "iron" was accurately descriptive of the distinctive ingredient of the bitters (Brown Chemical Company v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247).

But words which are merely suggestive of the qualities, ingredients, or characteristics of the articles to which they are applied, but do not

so accurately describe them that men of ordinary intelligence would
have recognized them upon seeing or hearing the words when first
applied, constitute valid trade-marks. Thus "tabloid" is a good trade-
mark, although it suggests a similarity to "tablet" and "table," and
it was applied to a troche in the form of a tablet. Wellcome v. Thomp-
son & Capper, 1 L. R. Chancery Division [1904] 736, 744. The argu-
ment was urged in that case that, when "tabloid" was first used, the
words "tabella," "table," and "tablet" were in common use, that the
suffix "oid" meant "like," or "allied to," or "in the form of"; and
hence that "tabloid" described an article like a table or a tablet. But
the test applied by the judges was, did the word "tabloid" really in-
telligibly describe the thing sold under that name when it was first
applied to it in the year 1884? They held that it did not and sustain-
ed the trade-mark. Byrne, J., at page 744 said:

"I come to the conclusion that in March, 1884, the word was not 'really in-
telligibly describing the thing sold,' which is the way in which Lindley, L. J.,
in 'Bovril' Case (1) [1896] 2 Ch. 607, puts the form of direction to the jury.
I agree that there is a suggestion or atmosphere of description about the word
as then used, but I do not think that it can be said to have been other than
a 'fancy word' as applied to goods in the class to which it was registered."

"Bromo-Caffeine," applied to a medicinal preparation composed of
caffeine, bromide of potassium, and other ingredients, is a good trade-
mark, although "caffeine" was a well-known article and "bromo" cer-
tainly suggested a bromide much more clearly that "ruberoid" sug-
gested rubber. Keasbey v. Brooklyn Chemical Works, 142 N. Y. 467,
471, 474, 475, 476, 37 N. E. 476, 40 Am. St. Rep. 623. The opinion
in that case was written by Judge Peckham, now Mr. Justice Peckham
of the Supreme Court, and he stated and applied the rule that a word,
though suggestive of form, character, or quality, was not disqualified
for a trade-mark unless it described the article when it was first ap-
plied to it, so that its character, qualities, or ingredients would be
recognized by a man of ordinary intelligence at that time upon seeing
or hearing the word. Caffeine was a well-known article, and the deci-
sion turned on the word "Bromo." Judge Peckham said:

"The word could only be said to inform one of the fact that bromine or some
kind of bromide had entered into and formed part of the compound, but upon
the question whether it was bromine, or one of the many different kinds of
bromides, the word 'Bromo' would give no knowledge whatever. A name
which furnishes no information on this point cannot be said to be so far de-
scriptive in its nature as to prevent its adoption as a trade-mark, so far as
this question is concerned."

"Cottolene," applied to a substance composed of cotton seed oil
and the product of beef fat, may be monopolized as a trade-mark.
Why may not "ruberoid," applied to a substance which is not compos-
ed of any form or extract of rubber? The court said:

"It seems clear that 'cottolene' is a proper and valid trade-mark. Although
it may suggest cotton seed oil, it is not sufficiently descriptive to render it in-
valid as a trade-mark under the recent decisions." N. K. Fairbank Co. v.
Central Lard Co. (C. C.) 64 Fed. 133, 134.

Under this rule trade-marks have been sustained in "Cocaine" (Bur-
nett v. Phalon, 9 Bosw. [N. Y.] 192); "Maizena" (Manufacturing

Co. v. Ludeling [C. C.] 22 Fed. 823); "Valvoline" (Leonard v. Lubricator [C. C.] 38 Fed. 922); "Bromidia" (Battle v. Finlay [C. C.] 45 Fed. 796); "Elastic" when applied to bookcases (Globe-Wernicke Co. v. Brown [C. C.] 121 Fed. 185, 186); "German Sweet Chocolate" (Walter Baker & Co. v. Baker [C. C.] 77 Fed. 181, 187, 188); "Anti-Washboard" (O'Rourke v. Central City Soap Co. [C. C.] 26 Fed. 576, 578); "No-To-Bac" (Sterling Remedy Co. v. Eureka Chemical & Mfg. Co., 80 Fed. 105, 25 C. C. A. 314); "Swan Down" applied to a complexion powder (Tetlow v. Tappan [C. C.] 85 Fed. 774); "Silicon" and "Electro-Silicon," applied to an article one of whose component parts was "silicon," (Electro-Silicon Co. v. Hazard, 29 Hun [N. Y.] 369); "Celery Compound" (Wells & Richardson Co. v. Siegel, Cooper & Co. [C. C.] 106 Fed. 77); "Cream" (Price Baking Powder Co. v. Fyfe [C. C.] 45 Fed. 799); "Lightning" applied to hay knives (Hiram Holt Co. v. Wadsworth [C. C.] 41 Fed. 34); "Maryland Club" applied to whisky (Cahn v. Gottschalk [Com. Pl.] 2 N. Y. Supp. 13); "Cough Cherries" (Stoughton v. Woodard [C. C.] 39 Fed. 902); "Sliced Animals," "Sliced Birds," "Sliced Objects," applied to dissected puzzle pictures (Selchow v. Baker, 93 N. Y. 59, 45 Am. Rep. 169); "Saponifier" (Pennsylvania Salt Mfg. Co. v. Myers [C. C.] 79 Fed. 87); "Insurance Oil" (Ins. Oil Tank Co. v. Scott, 33 La. Ann. 946, 39 Am. Rep. 286); "Congress Water" and "Congress Spring" (Congress & Empire Spring Co. v. High Rock Congress Spring Co., 45 N. Y. 291, 6 Am. Rep. 82); "Magnetic Balm," applied to a medicine (Smith v. Sixbury, 25 Hun [N. Y.] 232); and in numberless suggestive words and terms which failed to accurately describe the articles.

We may argue now, 17 years after the event, that "ruber" means rubber and "oid" means like, and hence "ruberoid" means like rubber; but there is no evidence in the record in this case that the word "ruberoid" or the word "rubberoid" had ever been applied to any kind of rubber roofing, or that either of them had ever meant felt saturated with the residuum of animal fats, before the complainant selected "ruberoid" as its trade-mark in 1891 and applied it to its product. There is uncontradicted evidence that neither of them had been so applied and that neither of them had any such meaning. "Ruberoid" was a word coined by the complainant. It had never existed until the complainant had made and applied it to its felt saturated with the residuum of animal fats, and it has never had any other meaning than the complainant's particular product. This evidence and these facts have forced my mind to the conclusion that no one who first heard or saw this word "ruberoid" in 1891, before the complainant taught its meaning by advertisements and application to its product, could have recognized thereby the product of the complainant, or the ingredients or characteristics of its roofing, and hence that the word "ruberoid" was not descriptive, but was a fanciful term, which constituted a perfect trade-mark. From this conclusion it necessarily follows that the use of the word "rubbero" to sell a similar product is a clear infringement of the complainant's trade-mark, and that the complainant is entitled to an injunction against that use.

Moreover, even if the word "ruberoid" had been so accurately descriptive that it could not have been a technical trade-mark, the result ought not to be different. In Buzby v. Davis, 80 C. C. A. 163, 165, 150 Fed. 275, 277, this court held that the complainant was entitled to an injunction against the use of the word "Keystone" and affirmed the following statement of the law, quoted from the opinion in Shaver v. Heller & Merz Co., 48 C. C. A. 48, 59, 108 Fed. 821, 832, in which an injunction against the use by the defendant of the word "American" to sell their goods as the manufactures of the complainant was sustained:

"The use of a geographical or descriptive term confers no better right to perpetrate a fraud than the use of. any other expression. The principle of law is general and without exception. It is that no one may so exercise his own rights as to inflict unnecessary injury upon his neighbor. It is that no one may lawfully palm off the goods of one manufacturer or dealer as those of another to the latter's injury. It prohibits the perpetration of such a fraud by the use of descriptive and geographical terms which are not susceptible of monopolization as trade-marks as effectually as it prohibits its commission by the use of any other expressions." 48 C. C. A. 55, 108 Fed. 827.

And it is the duty and practice of courts of equity to enjoin the use of descriptive and geographical terms by one competitor for the purpose of filching the trade of another. Thompson v. Montgomery, 41 Ch. Div. 35, 38, 47, 51; Montgomery v. Thompson, App. Cas. 217, 220; Lee v. Haley, 5 Ch. App. 155, 161; Wotherspoon v. Currie, L. R. 5 H. L. 508, 522, 523; Brewery Co. v. Powell [1897] App. Cas. 710, 716; American Waltham Watch Co. v. U. S. Watch Co., 173 Mass. 85, 53 N. E. 141, 43 L. R. A. 826, 73 Am. St. Rep. 263; Flour Mills Co. v. Eagle, 86 Fed. 608, 628, 30 C. C. A. 386, 406, 41 L. R. A. 162; American Brewing Co. v. St. Louis Brewing Co., 47 Mo. App. 14, 20; Cady v. Schultz, 19 R. I. 193, 32 Atl. 915, 29 L. R. A. 524, 61 Am. St. Rep. 763; Newman v. Alvord, 49 Barb. (N. Y.) 588; McLean v. Fleming, 96 U. S. 245, at pages 254, 255, 24 L. Ed. 828; Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 674, 21 Sup. Ct. 270, 45 L. Ed. 365; Reddaway v. Banham [1896] App. Cas. 199, 204, 211, 215; Buzby v. Davis, 80 C. C. A. 163, 165, 166, 150 Fed. 275, 277, 278; Shaver v. Heller & Merz Co., 48 C. C. A. 48, 59, 108 Fed. 821, 832, in which this court sustained an injunction issued by the Circuit Court which forbade the defendants from using the word "American" to sell their goods as the manufactures of the complainant.

The general rule is that one may not use his own name even to sell his goods as those of another, and defendants have been enjoined from using their names for that purpose in these cases: Croft v. Day, 7 Beav. 84, 89, 90; Meyer v. Medicine Co., 58 Fed. 884, 887, 7 C. C. A. 558, 565, 18 U. S. App. 373, 378; Garrett v. T. H. Garrett & Co., 78 Fed. 472, 477, 478, 24 C. C. A. 173, 178, 179; Walter Baker & Co. v. Sanders, 80 Fed. 889, 26 C. C. A. 220, 51 U. S. App. 421; Tarrant & Co. v. Hoff, 76 Fed. 959, 961, 22 C. C. A. 644, 646; R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 70 Fed. 1017, 1019, 17 C. C. A. 576, 578, 35 U. S. App. 843, 847, 848; Thread Co. v. Armitage, 45 U. S. App. 62, 73, 21 C. C. A. 178, 186, 74 Fed. 936, 944.

3. The argument that one who uses a generic or descriptive term

is not entitled to an injunction against the use of simulative names or terms, and hence that the defendant has a superior equitable right to use the word "rubbero" to sell its goods as the "ruberoid" of the complainant, is not persuasive to my mind, because the generic name of the product in this case is "rubber roofing," and the word "ruberoid" has never become the generic name of the product, but has always been a specific designation of complainant's particular manufacture of it, because, in my opinion, for the reasons which have already been stated, "ruberoid" was not descriptive of that product when first applied, and because the word "rubbero" is neither the generic name of the product nor any simulation of it, but is a coined, fanciful word, conceived and applied to simulate, not the generic name "rubber roofing," but the specific designation of complainant's manufacture, the term "ruberoid," and to palm off the goods of the defendant as those of the complainant.

4. It is said that the defendant should be permitted to use the word "rubbero" to sell its product as that of the complainant because it does not accomplish that end by the simulation of the name of the complainant or by simulation of the complainant's other peculiarities of the dress of its goods. But this product of the complainant is ordered and sold throughout the world by its name "ruberoid," and many of those who purchase it doubtless never see its dress until they have made their purchases. In my opinion the evidence is plenary that the defendant creates confusion in the trade and filches the complainant's business by the use of this word "rubbero." It is no defense for one who kills with a pistol that he did not kill with a sword, or for one who defrauds by mortgage that he did not defraud by a deed, and in my opinion it ought to be no defense for one who palms off his own goods as those of another by the use of a successful simulation of the name of the latter's manufacture that he does not accomplish that end by other means, or that he places his own name and address and the assertion of his manufacture and ownership upon the product. The chief effect of placing the defendant's unfamiliar name and marks upon an article so well known as appellee's "ruberoid" was to give the appellant the benefit of the established reputation of appellee's articles and thus to enable it to derive a greater benefit from its fraud. "That is an aggravation, and not a justification, for it is openly trading in the name of another upon the reputation acquired by the device of the perpetrator." Menendez v. Holt, 128 U. S. 514, 521, 9 Sup. Ct. 143, 32 L. Ed. 526; Gillott v. Esterbrook, 48 N. Y. 374, 378, 8 Am. Rep. 553.

5. Nor does it appear to me to be the logical result of an injunction against the use of the word "rubbero" by the defendant to filch the complainant's trade that none of the other manufacturers of rubber roofing could lawfully call their products "rubberoid roofing" or "rubber roofing." "Rubber roofing" is the generic name of the product of all these manufacturers, and they all have and exercise an undoubted right to use that name. "Ruberoid" is the fanciful term by which the complainant designates its particular manufacture of this product. "Rubbero" is the fanciful word devised and used by the defendant to simulate, not the generic name "rubber roofing," but the fanciful name of defendant's product for the purpose of palming off the defendant's

goods as the complainant's ruberoid.   How can an injunction against
the continuance of this fraud logically, or otherwise, deprive manufac-
turers of the right, whose exercise works no fraud, to call their pro-
ducts "rubber roofing," as they have called them without objection or
interruption during the 17 years that the complainant's manufacture
has been made and sold as "ruberoid"?

The cases of Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 178,
186, 189, 201, 204, 16 Sup. Ct. 1002, 41 L. Ed. 118, and the "Castoria"
case (Centaur Co. v. Heinsfurter, 84 Fed. 955, 956, 28 C. C. A. 581),
upon which the majority seem to rely so confidently, illustrate an ex-
ception to the general rule of the law of unfair competition, under
which the case at bar, in my opinion, does not fall.   That exception is
that where a patentee, during the life of his patent, confers an arbi-
trary or a generic name upon the patented article, by which alone it
comes to be known during the term of the patent, such as "Singer"
in the former case and "Castoria" in the latter, the right to the use of
that name passes to the public upon the expiration of the patent.
163 U. S. 178, 183, 199, 16 Sup. Ct. 1002, 41 L. Ed. 118.   But if
there had been no patent, or if there had been no conference of
such name, or if there had been no expiration of the patent, the
right to the use of the name would not have passed to the public.
Those cases are inapplicable to the case at bar, because the complain-
ant's product was never protected by a patent, because "ruberoid,"
the trade-name of its manufacture, was not conferred upon the prod-
uct while the complainant had a patented monopoly of its manufac-
ture, and because that term never became the generic name of the
product, which was and is "rubber roofing," but has always been, and
still is, simply the distinguishing name of complainant's particular
manufacture.   This case falls under the general rule, and that is that
no one may lawfully use any word or expression which has come to
signify his competitor's product, for the purpose of filching his trade
and perpetrating a fraud upon the public.   In Reddaway v. Banham
the plaintiff had manufactured and sold for 14 years belting, made
chiefly of camel's hair, under the name "camel hair belting," until that
term had come to signify Reddaway's belting to the trade.   Then the
defendant commenced to make belting of camel's hair and to sell it as
"camel hair belting."   The court below refused to sustain an injunc-
tion against him, but the House of Lords reversed that decision and
restrained the defendant from using the words "camel hair," so as
to palm off its goods as those of the complainant.   Lord Herschell said:

"In my opinion the doctrine on which the judgment of the Court of Appeal
is based, that where a manufacturer has used as his trade-mark a descriptive
word he is never entitled to relief against a person who so uses it as to induce
in purchasers the belief that they are getting the goods of the manufacturer
who has theretofore employed it as his trade-mark, is not supported by au-
thority and cannot be defended on principle.   I am unable to see why a man
should be allowed in this way, more than in any other, to deceive purchasers
into the belief that they are getting what they are not, and thus to filch the
business of his rival."

In Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S.
665, 674, 21 Sup. Ct. 270, 45 L. Ed. 365, a case determined by the Su-

preme Court long after Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247, the Supreme Court held that the word "Elgin" was a geographical term, not the subject of a trade-mark. But it also reviewed with approval Wotherspoon v. Currie and Reddaway v. Banham, and said:

"But it is contended that the name 'Elgin' had acquired a secondary significa-tion in connection with its use by appellant, and should not for that reason be considered or treated as a mere geographical name. It is undoubtedly true that, where such a secondary signification has been acquired, its use in that sense will be protected by restraining the use of the word by others in such a way as to amount to a fraud on the public and on those to whose employ-ment of it the special meaning has become attached."

The word "rubbero" is so similar to the word "ruberoid," so different from the generic name "rubber roofing," that I am unable to bring my mind to believe or suppose that it was conceived or used for any other purpose than to palm off the defendant's goods as those of the plaintiff. Under the decision of the Supreme Court in Menendez v. Holt, 128 U. S. 514, 521, 9 Sup. Ct. 143, 32 L. Ed. 526, and other authorities of like character, the fact that the complainant added its name and address and asserted its manufacture of the product it sold under this name "rubbero" not only failed, in my opinion, to excuse, but had the effect to aggravate, the offense, and the decree for an injunction against the continued perpetration of this fraud granted by the court below should, I think, be affirmed, both because complainant's "ruberoid" was not descriptive of its product, but was a fanciful word and a good technical trade-mark, which was infringed by the defendant's use of the word "rubbero," and because the evidence has convinced me, as it did the court below, that the defendant was guilty of unfair competition by the use of this word "rubbero" to palm off its product as the ruberoid of the complainant.